THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRACY SMITH, Defendant-Appellant.

Fourth District No. 4—90—0449

Opinion filed February 26, 1991.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Tracy Smith was convicted of residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3(a)) and burglary to a truck (Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a)) by the Adams County circuit court on April 26, 1990. Defendant contends the building he burglarized was not a "dwelling" within the meaning of the residential burglary statute and thus seeks to have his conviction reversed. Defendant does not appeal his conviction for burglary to a truck. We affirm the trial court.

Arthur Vahlkamp owns a vacation home, commonly called a "camp," located on North Bottoms Road, which parallels the Mississippi River. This camp is in Adams County, Illinois. The camp consists of two bedrooms, a bathroom, a storage room, a living room, and a kitchen. It has heating and air conditioning and also has telephone service throughout the year. Vahlkamp spends 95% of his time there during the summer. During the spring and fall, he stays there about 50% of the time and during the winter he goes there to check on things and only spends time there weather permitting. Vahlkamp's children spend time there, as do his brother and his cousin.

On January 10, 1990, defendant, along with C.J. Stinnett and Michael Totsch, entered this camp through the front door—which was open due to a previous burglary by Stinnett. Stinnett testified at the trial that he participated in the burglary of January 10, but did not take any property. Stinnett testified that Totsch took a drill and some tools as well as a cordless telephone and that defendant took a Coleman lantern and five or six pocketknives. Defendant gave a statement to the police that he actually did not go into the building

but that he waited outside and took the lantern off a pole. The lantern was recovered from the defendant's mother at her house. She stated she bought the lantern for $25 from some kids in a green pickup truck in late January or early February.

Prior to the January 10 burglary, Vahlkamp had last checked his camp sometime between Christmas Day and New Year's Day. He did not check on the camp until the police reported to him that it had been broken into. Vahlkamp stated that he had moved out for the winter season sometime in early November 1989. Furthermore, at the time of the trial, April 26, 1990, Vahlkamp had begun to move back into the camp for the summer.

Defendant was convicted of residential burglary. He filed a timely notice of appeal and now contends his conviction should be reversed because the camp was not a "dwelling" within the meaning of the residential burglary statute.

■■ ■ Section 2—6(b) of the Criminal Code of 1961 (Code) provides:

> "(b) For the purposes of Section 19—3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." (Ill. Rev. Stat. 1989, ch. 38, par. 2—6(b).)

Section 19—3 of the Code provides:

> "(a) A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." Ill. Rev. Stat. 1989, ch. 38, par. 19—3(a).

Defendant contends this court should reconsider its position in *People v. Benge* (1990), 196 Ill. App. 3d 56, 552 N.E.2d 1264, based on the Illinois Supreme Court's decision in *People v. Thomas* (1990), 137 Ill. 2d 500, 561 N.E.2d 57. We decline to do so.

The facts in *Benge* are amazingly similar to those in the present case. There, defendant was convicted of residential burglary. Defendant broke into a cabin located on the same road as the camp in the present case and took several items, including a Coleman lantern and a Coleman cook stove. Although the building in *Benge* was referred to as a cabin and the building here was called a camp, it appears that they are similar structures.

The defendant in *Benge* argued that the cabin into which he entered was not a "dwelling" within the meaning of the residential burglary statute. Defendant argued that since the cabin was only

used on weekends by the owner and the owner was not actually residing there at the time of the incident, the cabin was not a "dwelling" for purposes of the statute.

This court rejected defendant's argument, holding that such a cabin was a "dwelling" within the meaning of section 2—6(b) of the Code. (*Benge*, 196 Ill. App. 3d at 58, 552 N.E.2d at 1265.) This court based its holding on the circuit court's conclusion that this building was a "dwelling," as well as on the legislative history of section 2—6(b) of the Code.

The Illinois Supreme Court held in *Thomas* that an attached garage is not necessarily a "dwelling" within the meaning of the residential burglary statute. (*Thomas*, 137 Ill. 2d at 519, 561 N.E.2d at 64.) In that case, defendant was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), aggravated arson (Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1), arson (Ill. Rev. Stat. 1985, ch. 38, par. 20—1(a)), and burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a)). There, defendant entered the garage of the victim in order to steal perfume which she had stored in this garage. Defendant had a bottle of perfume in his hand, which he dropped when the victim entered the garage. Defendant attempted to flee the garage but the victim grabbed his shirt and began screaming. Defendant then took a knife from his pocket and repeatedly stabbed the victim, severing her spinal cord and killing her instantly. Defendant then set fire to the garage, hoping to conceal this murder.

With respect to the burglary charge, defendant contended the evidence established he committed, if anything at all, burglary and not residential burglary. Thus, defendant argued he was improperly charged and convicted. However, the court rejected this argument.

The court stated it had previously defined a "dwelling" as a structure "that is 'used by another as a residence or living quarters in which the owners or occupants actually reside.' " (*Thomas*, 137 Ill. 2d at 519, 561 N.E.2d at 64, quoting *People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517.) This definition was later used by the legislature when amending the Code and adding subsection (b) to section 2—6 of the Code. The court stated the garage, regardless if it was attached or unattached, could not be said to be a residence or living quarters. Thus, the proper charge to be brought against defendant was burglary, rather than residential burglary.

The court distinguished a case decided by this court in which we held that an attached garage is a "dwelling" for purposes of the residential burglary statute. (*People v. Dawson* (1983), 116 Ill. App. 3d 672, 452 N.E.2d 385.) It noted that *Dawson* was decided prior to the

amendment of the statute defining "dwelling," as well as prior to the court's decision in *Bales*. Thus, the court stated its decision (in *Thomas*) was not necessarily inconsistent with the reasoning in *Dawson*.

We fail to see how *Thomas* changes our position in *Benge* that a cabin or camp such as the one in the present case is a "dwelling" for purposes of the residential burglary statute.

First, the building in *Thomas* was vastly different than the buildings in the present case and in *Benge*. Certainly, an attached garage used as a storage facility cannot be said to be "living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." (Ill. Rev. Stat. 1989, ch. 38, par. 2—6(b).) There is no evidence whatsoever to indicate the victim in *Thomas* actually ever lived in the garage or ever intended to live in the garage.

On the contrary, in the present case, ample evidence existed to demonstrate that Vahlkamp resided and intended to reside again in this camp. This camp had five rooms, heat, air conditioning, and telephone service throughout the year. During the summer, Vahlkamp's family stayed there together as a familial unit. Clearly, this is the type of structure intended to be a "dwelling" as defined by the legislature. The supreme court's decision in *Thomas* in no way addresses the issue of whether a camp or cabin, such as the one in the present case and in *Benge*, is a "dwelling" within the meaning of the statute. Thus, it presents no basis for altering our position in *Benge* that this type of structure is a "dwelling" for purposes of section 2—6(b) of the Code.

Defendant places a heavy emphasis on the fact that the burglary took place during the winter months when Vahlkamp did not stay at the camp on a regular basis. Defendant argues this fact distinguishes the present case from *Benge*, in which the burglary occurred at a time when the owner was residing there on the weekends. Defendant's counsel stated at the sentencing hearing, when arguing his motion for judgment *n.o.v.* in attempting to distinguish *Benge*, "the only difference, and I think it's a major difference, and perhaps a fatal difference here, is the time that the entry took place and the nature of the supposed dwelling at that point in time of the entry."

We decline to draw such a distinction. The fact that defendant chose to burglarize the camp during January and the defendant in *Benge* did so in October is merely a fortuitous circumstance. This timing difference is insignificant to persuade us to alter our position in *Benge*. We cannot change what structures are encompassed by the

definition of "dwelling" because of the month in which the offense occurred. To do so would obviously create havoc. The key inquiry is the intent of the owner to reside in the building within a reasonable period of time after his absence. As was noted in *Benge,* the statement of Senator Sangmeister indicated that the legislature intended to include vacation homes when redefining dwelling. (*Benge,* 196 Ill. App. 3d at 58, 552 N.E.2d at 1265, citing 84th Ill. Gen. Assem., Senate Proceedings, June 18, 1986, at 66 (statements of Senator Sangmeister).) In this case, Vahlkamp clearly intended to reside in his camp as soon as the weather permitted.

Therefore, we find the Illinois Supreme Court's decision in *Thomas* does not change our position in *Benge* that a cabin or camp of this nature is a "dwelling" within the meaning of section 2—6(b) of the Code. Defendant's convictions for residential burglary and burglary to a truck are affirmed.

Affirmed.

LUND, P.J., and SPITZ, J., concur.