THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL SILVA, Defendant-Appellant.

First District (2nd Division)   No. 1—92—2620

Opinion filed December 28, 1993.

Rita A. Fry, Public Defender, of Chicago (Robert T. Fox and Jeffrey M. Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, William D. Carroll, and Scott V. Bruner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Miguel Silva was convicted of residential burglary and sentenced to a prison term of 10 years. On appeal, he contends that his conviction should be reduced from residential burglary to burglary and the cause remanded for resentencing, because the unoccupied first-floor and basement apartments of the building in question did not constitute a dwelling within the meaning of the residential burglary statute. We disagree.

Mark Beard-Witherup (hereinafter complainant) has owned a two-flat apartment building in Chicago since 1982. In October 1991, he and his wife were living in the second-floor apartment. No one lived in the first-floor apartment, and no one lived in the basement, which was a garden apartment. Complainant and his wife were remodeling, redecorating, and finishing the garden apartment. They were also working slowly on the first-floor apartment. Complainant stored tools, stereo equipment, and "personal things" in the first-floor apartment. He left his power tools wherever he was working with them, and he left a power drill in the garden apartment.

A front stairwell led from the second-floor apartment to the first floor, and there was a locked door in the stairwell. The location of the locked door in the stairwell is not clear from the record.

At about 10 a.m. on October 14, 1991, complainant left the building. When he returned at about 2:30 p.m., the door to the enclosed back porch was ajar. That door was three steps up from the garden apartment. In addition, the door to the garden apartment and the back door leading from the enclosed back porch to the kitchen of the first-floor apartment were ajar. The window next to the garden apartment door was slightly open.

Complainant noticed that his tools and his stereo equipment were missing from the first-floor apartment, and he noticed further that the power drill which he had left in the garden apartment was missing. There was no evidence that the intruder had entered the second-floor apartment.

Chicago police found defendant's fingerprint on the outside doorknob of the door leading from the back porch to the kitchen of the first-floor apartment. When they arrested defendant on November 29, 1991, he told them that he had gained entry through a back window and a back door, that he had taken stereo equipment and tools, and that he had sold the items on the street to buy drugs. At the time of trial in May 1992, complainant was still working on the first-floor apartment, and no one was living in it. There was no evidence indicating whether the garden apartment was occupied at the time of trial.

In denying defendant's motion for a finding of acquittal at the

close of the evidence, the circuit court observed that the definition of "dwelling" for the purpose of residential burglary was amended as of January 1, 1987, to require in section 2—6(b) of the Criminal Code of 1961 " 'living quarters in which at the time of [the] alleged offense [the] owners or occupants actually reside or in their absence intend within [a] reasonable period of time to reside.' " (See Ill. Rev. Stat. 1987, ch. 38, par. 2—6(b).) The circuit court observed further that complainant owned the entire building, which contained separate and distinct apartments; that no one lived on the first floor or in the basement; and that complainant stored some of his personal property there, including stereo equipment, which the circuit court presumed was not hooked up. Defense counsel then pointed out that the first-floor apartment remained unoccupied seven months after the crime, and the circuit court replied that that circumstance concerned the question of whether the first-floor apartment was intended within a reasonable period of time to be a residence. The circuit court analogized the unoccupied space to a "large cluttered closet within [complainant's] home," because complainant owned the entire building and used the space for storage. The circuit court observed that complainant easily could have moved into the space, because he owned it, he was "rehabbing" it, and he intended it to be "used as human habitation within [a] reasonable period of time." The circuit court then denied defendant's motion for a finding of not guilty and, at the conclusion of all the evidence, found him guilty of residential burglary.

Defendant subsequently filed a motion for a new trial in which he contended, *inter alia*, that the circuit court erred in ruling that the unoccupied space was a dwelling. In denying defendant's motion, the circuit court observed that the definition of "dwelling" was the key issue. The court then reaffirmed that the space was part of the dwelling because complainant owned the building, was living in one apartment, and was rehabbing the other apartment and using it to store personal property at the time of the crime. The circuit court stated that complainant was using the space as part of his home and as an extension of his home. Finally, the court stated further that "part of the home that they actually lived in was accessible by this apartment."

On appeal, defendant contends that the unoccupied first-floor and garden apartments were not dwellings within the meaning of the residential burglary statute because they were neither an actual nor an intended residence. Defendant asserts that the space was not an actual residence because it was not used for cooking, eating, watching television, or sleeping, but was used solely for storage like a garage.

According to defendant, the residential burglary statute is not applicable to garages and therefore is not applicable to the garage-like storage space in this case. Defendant asserts further that the space was not an intended residence because the State never established the reason the space was being rehabbed, and it remained unoccupied at the time of the trial, which was seven months after the crime. According to defendant, it was as reasonable to infer that the purpose of rehabbing the space was to meet building code requirements for plumbing or electricity, or to improve the storage capability of the space, as it was to infer that the purpose of rehabbing the space was to prepare it for residential use. Defendant also contends that the circuit court wrongly applied the definition of "dwelling" set forth in section 2—6(a), instead of section 2—6(b), of the Criminal Code of 1961. Defendant concludes that his conviction must be reduced from residential burglary to burglary, and that the cause must be remanded for resentencing.

Burglary is defined as follows:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include *** the offense of residential burglary as defined in Section 19—3 hereof." (Ill. Rev. Stat. 1991, ch. 38, par. 19—1(a) (now codified as 720 ILCS 5/19—1(a) (West 1992)).)

Residential burglary is defined as follows:

"A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." Ill. Rev. Stat. 1991, ch. 38, par. 19—3(a) (now codified as 720 ILCS 5/19—3(a) (West 1992)).

Section 2—6 of the Criminal Code of 1961 sets forth two separate definitions of "dwelling":

"(a) Except as otherwise provided in subsection (b) of this Section, 'dwelling' means a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as human habitation, home or residence.

(b) For the purposes of Section 19—3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." (Ill. Rev. Stat. 1991, ch. 38, par. 2—6 (now codified as 720 ILCS 5/2—6 (West 1992)).)

Section 2—6(b), which defines "dwelling" for the purpose of residential burglary, was enacted effective January 1, 1987. See Pub. Act

84—1289, eff. January 1, 1987 (amending Ill. Rev. Stat. 1985, ch. 38, par. 2—6); see also *People v. Donoho* (1993), 245 Ill. App. 3d 938, 615 N.E.2d 805 (residential burglary conviction was reversed due to improper definitional instruction on "dwelling"); *People v. Edgeston* (1993), 243 Ill. App. 3d 1, 9, 611 N.E.2d 49.

During legislative debates, Senator Sangmeister explained the intent of the amendment as follows:

"Yes, it was even brought to our attention by the Illinois Supreme Court in a number of cases that *** there should be a better definition to the dwelling house. We are having people prosecuted for residential burglary for breaking into *** unoccupied buildings such as garages. Therefore, very simply, we have redefined dwelling to mean a house, apartment, mobile home, trailer or other living quarters in which at the time of the alleged offense the owners or occupants actually reside in or *** in their absence intend within a reasonable period of time to reside. So that still covers, in my opinion, the vacation home; you intend to reside in that and if you burglarize that, you would still be committing residential burglary, but it tightens up some of these cases where we got old abandoned buildings around our garages and stuff that *** would not be residential burglary. I don't think there's any opposition to the bill. I'll be happy to try to answer any questions." 84th Ill. Gen. Assem., Senate Proceedings, June 18, 1986, at 66-67 (statements of Senator Sangmeister).

Burglary is a Class 2 felony with a statutory penalty range of not less than three years' nor more than seven years' imprisonment. (Ill. Rev. Stat. 1991, ch. 38, pars. 19—1(b), 1005—8—1(a)(5) (now codified as 720 ILCS 5/19—1(b); 730 ILCS 5/5—8—1(a)(5) (West 1992)).) Residential burglary is a Class 1 felony with a statutory penalty range of not less than four years' nor more than 15 years' imprisonment. (Ill. Rev. Stat. 1991, ch. 38, pars. 19—3(b), 1005—8—1(a)(4) (now codified as 720 ILCS 5/19—3(b); 730 ILCS 5/5—8—1(a)(4) (West 1992)).)

"The overall legislative scheme evidences an intent to make clear that an offender may not be charged with residential burglary—a crime with a more severe penalty—when he unlawfully entered a structure that was not a 'dwelling place of another.'" (*Edgeston*, 243 Ill. App. 3d at 10.)

The residential burglary statute is designed to protect the "privacy and sanctity of the home," with a view toward the "greater danger and potential for serious harm from burglary of a home as opposed to burglary of a business." *Edgeston* 243 Ill. App. 3d at 10.

A court of review must consider all of the evidence in a criminal bench trial in the light most favorable to the prosecution, which serves to preserve the fact finder's function as the weigher of the evi-

dence. (*People v. Wilson* (1993), 155 Ill. 2d 374, 614 N.E.2d 1227.) A court of review must not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Mata* (1993), 243 Ill. App. 3d 365, 369, 611 N.E.2d 1235.

In *People v. Suane* (1987), 164 Ill. App. 3d 997, 518 N.E.2d 458, *appeal denied* (1988), 119 Ill. 2d 572, 522 N.E.2d 1254, a carpenter purchased a two-story building and renovated the second story while he and his wife lived in the lower level. An inside staircase led from the first floor to the second floor, and no walls separated the second-floor room from the stairway. Police observed defendant exiting the second-floor door, carrying a tool. Two codefendants also exited the door. On appeal, they contended that they could not properly be convicted of residential burglary, because they were not in a dwelling place, as defined by the former statute, which currently is set forth in section 2—6(a) of the Code. Applying that definition, we held that the unoccupied second floor was a "dwelling place" within the meaning of the residential burglary statute. We stated that

> "the residential burglary statute applies to burglaries of structures intended for use as residences, regardless of whether the structure was being actively used as a residence at the time the burglary was being committed. *** Accordingly, the mere fact that the [owners] were not actually or physically occupying the second floor of their home does not mean that that portion of the building was not a part of their residence." (*Suane*, 164 Ill. App. 3d at 1002.)

Bolstering our conclusion that the defendants in *Suane* were properly convicted of residential burglary was the existence of the inside stairway, as well as the existence of evidence that the defendants had entered the occupied first floor of the building. In this case, however, the stairway was not actually inside the apartments, and there was no evidence that defendant entered the occupied second-floor apartment.

In a case involving the amended definition of "dwelling," the Illinois Supreme Court expressly reserved the question presented in *Suane* as to whether entry of an unoccupied floor of a house could constitute residential burglary. In *People v. Thomas* (1990), 137 Ill. 2d 500, 561 N.E.2d 57, *cert. denied* (1991), 498 U.S. 1127, 112 L. Ed. 2d 1196, 111 S. Ct. 1092, the decedent was in the business of selling perfume, and she stored large quantities of perfume in her garage. The garage was part of a multi-unit structure, and the garage and the living units were attached and under the same roof. When the decedent found the defendant taking perfume from her garage, the

defendant killed her. The defendant was convicted of, *inter alia*, murder and burglary. One of his contentions on appeal was that he was improperly charged and convicted of burglary because the facts established, if anything, residential burglary rather than burglary. The Illinois Supreme Court stated:

> "We hold here that an attached garage is not necessarily a 'dwelling' within the meaning of the residential burglary statute. *** A garage, at least in this instance, whether attached to the various living units or not, cannot be deemed a residence or living quarters. ***
>
> *** We leave to another day the question of whether the entry of an unoccupied portion of the second floor [citation] or the porch [citation] of a house constitutes the unlawful entry of a residence." *Thomas*, 137 Ill. 2d at 519-20.

In what we believe to be a misreading of *Thomas*, another division of this district has held that a garage, whether attached or not, as a matter of law does not constitute a dwelling for the purpose of the residential burglary statute. See *Mata*, 243 Ill. App. 3d at 368, 379.

Although *Suane* is neither factually nor legally identical to this case, we believe that the application of section 2—6(b) to the present case yields a similar result. We believe, in other words, that the burglary of the unoccupied first-floor and garden apartments undergoing renovation in this case was a residential burglary under the definition of "dwelling" found in section 2—6(b) of the Code.

There was evidence in this case from which the circuit court could have found that the unoccupied space was a dwelling within the meaning of section 2—6(b). The circuit court reasonably could have inferred that complainant intended either to live in the unoccupied space or to rent the space to a tenant. The evidence from which this inference could have been drawn was the complainant's testimony that he was remodeling, redecorating, and finishing the space. Although defendant contends that it just as reasonably could have been inferred that complainant was renovating the space to conform to building codes rather than to prepare it for residential use, it was the function of the circuit court as fact finder in defendant's bench trial to weigh the evidence and the inferences therefrom. Moreover, defendant's argument overlooks the fact that complainant was decorating the space, which strongly suggests that he intended it to be a residence. Also of significance is that the space was not part of an abandoned building; it was part of a structure which was serving as a dwelling place for complainant, who was using the space for storage. Therefore, the circuit court was entitled to find that the space was comparable to a closet. The space

implicated the concerns for privacy, sanctity of the home, and the potential for serious harm which are addressed by the residential burglary statute. Even if the space was similar to a garage in that it was being used for storage rather than for cooking, eating, sleeping, or watching television, *Thomas* did not hold that a garage *per se* is not a dwelling within the meaning of the residential burglary statute; rather, *Thomas* held that the particular garage involved in that case was not a dwelling. Furthermore, the reason that the space in the present case was not being used for the activities mentioned by defendant was that it was undergoing renovation, unlike the garages in *Thomas* or *Mata*.

We further believe that the circuit court properly applied the definition of "dwelling" found in section 2—6(b). Defendant's assertion that the circuit court improperly relied upon section 2—6(a) fails to consider the record as a whole. (See *People v. Ward* (1984), 101 Ill. 2d 443, 454, 463 N.E.2d 696.) Viewed as a whole, the record discloses that the circuit court observed that the applicable definition was found in section 2—6(b) and read the definition into the record.

Defendant stresses that complainant could not have intended the space to be a residence within a reasonable period of time, because the first-floor apartment remained unoccupied at the time of trial. We do not believe that the seven-month interval of time between the crime and the trial negates the section 2—6(b) requirement that complainant's intent to reside be within a reasonable period of time. The circuit court could have found that the seven-month interval of time was reasonable given complainant's ongoing renovation of the space. The circuit court also could have found that the seven-month interval of time was quite brief in comparison to the seven-year interval of time involved in *People v. Bonner* (1991), 221 Ill. App. 3d 887, 889-90, 583 N.E.2d 56, which defendant has cited on appeal. We conclude that the circuit court was entitled to find that the unoccupied basement and first-floor apartments in the two-flat building, undergoing renovation by the owner of the building and used for storage by the owner, who lived in the second-floor apartment, constituted a dwelling within the meaning of section 2—6(b) of the Criminal Code of 1961.

The judgment of the circuit court is affirmed.

Affirmed.

McCORMICK, P.J., and SCARIANO, J., concur.