THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BOYD BORGEN, Defendant-Appellant.

Second District    No. 2—94—0719

Opinion filed July 9, 1996.

·GEIGER, J., specially concurring.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's
Office, of Elgin, for appellant.

Douglas P. Floski, State's Attorney, of Oregon (William L. Browers and
Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office,
of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Boyd Borgen, was charged with one count of burglary
(720 ILCS 5/19—1(a) (West 1994)). A jury found defendant guilty, and

the trial court sentenced him to seven years' imprisonment. Defendant now appeals both his conviction and sentence. We reverse his conviction.

The facts relevant to our decision are as follows. On July 14, 1993, defendant was charged by information with one count of burglary (720 ILCS 5/19—1(a) (West 1992)). The information alleged that on July 3, 1993, defendant knowingly and without authority entered the building of Jeff Wilmarth, located at 1028 Crestview Trail, Byron, Illinois, with the intent to commit a theft therein.

The trial commenced on November 1, 1993. Mary Wilmarth and Jeff Wilmarth testified that they live with their five children at 1028 Crestview Trail, Byron, Illinois. At 2:30 a.m. on July 3, 1993, as she was preparing for bed, Mrs. Wilmarth noticed the garage light turn on. Mr. and Mrs. Wilmarth described the garage as follows. The garage has two doors: an inside door and an outside door. The inside door leads directly into the laundry room of the house. The outside door, which is usually locked, serves as the entranceway between the garage and the yard and driveway. The garage holds a tool box, two lawn mowers, and various yard tools. The family's van and station wagon, at least on the night in question, were parked in the garage. According to Mrs. Wilmarth, her children sometimes sleep in the garage.

Upon seeing the garage light turn on, Mrs. Wilmarth woke up her husband. They then noticed the light turn off. Mr. Wilmarth then saw defendant, who had something under his arm, looking into the window of the station wagon. Mr. Wilmarth left the house and entered the garage through the inside door, but found no one there. He then exited the garage from the outside door and saw defendant standing at the edge of the driveway.

According to Mr. Wilmarth, he ordered defendant to stop. Defendant ran instead. Mr. Wilmarth then chased and caught defendant about a block from the Wilmarth home. He punched defendant about six times and asked him why he was in his house. Defendant answered that he was just looking for a place to sleep. Because no cars were stopping to help, Mr. Wilmarth took the item he had seen defendant carrying and let him go. He then returned to his house to call the police. The item he took from defendant was a purse. The purse belonged to a woman who lived several blocks from the Wilmarths.

Defendant, a convicted burglar and forger, testified that he frequented four taverns in Byron from 7:30 p.m. on July 2, 1993, to 2 a.m. on July 3, 1993. At 2 a.m. he started to walk home. While walking home, he noticed a purse lying in a driveway. According to defen-

dant, he guessed that the purse belonged to whomever owned the property. He therefore walked into the garage through the open garage door and knocked loudly on the inside garage door. When no one answered, he turned on the garage light and peered into the station wagon, hoping to find the address or name of the owner of the house (and thus, presumably, of the purse). Not finding an address or name, defendant exited the garage from the outside door and saw the front of the house. While defendant was contemplating whether he should knock on the front door, Mr. Wilmarth came running at him with his fists in the air. Defendant ran but was caught by Mr. Wilmarth. Mr. Wilmarth punched him several times and asked him why he was in the Wilmarths' house. Mr. Wilmarth then took the purse and left. At the close of his testimony, defendant rested his case.

After being instructed, the jury returned a verdict of guilty. On February 14, 1994, the trial court, Judge Dennis J. Riley presiding, conducted a sentencing hearing on defendant's case. Judge John L. Moore, who had presided over defendant's trial, had retired. At the conclusion of the evidence, the State asked the trial court to impose a seven-year term of imprisonment, the maximum nonextended term available. Before imposing sentence, the trial court noted that "I didn't have any, any opportunity or ability to observe or here [sic] the details of [the facts of the case] at all." The trial court then sentenced defendant to seven years' imprisonment. In doing so, the trial court stated that defendant had five prior felony and six prior Class A misdemeanor convictions.

On March 15, 1994, defendant filed a motion to reconsider his sentence. At a hearing on the motion, defendant requested that he be allowed to enter the Illinois impact incarceration program. Defendant also asked the trial court to review a transcript of the trial testimony, because that was the only way it could evaluate the various factors in aggravation and mitigation. On April 20, 1994, the trial court ruled that it would not recommend or approve defendant for the impact incarceration program, and it denied defendant's request that it review a transcript of the trial testimony. Defendant then filed this appeal.

Defendant has three contentions on appeal: (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of burglary; (2) the prosecutor's cross-examination of him, which revealed he was not married to the mother of his child and which insinuated he had prior convictions for residential burglary, denied him a fair trial; and (3) the trial court abused its discretion when it failed to review a transcript of the trial testimony before sentencing him.

Defendant first contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of burglary. Defendant argues that the evidence adduced at trial established he entered a dwelling—an attached garage to a single-family home—in violation of the offense of residential burglary. Because the offenses of residential burglary and burglary are mutually exclusive, defendant reasons he could not have been guilty of burglary. As such, he asks that we reverse his conviction outright.

Our standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985); *People v. Charleston*, 278 Ill. App. 3d 392, 398 (1996). This standard of review does not normally allow the reviewing court to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Childress*, 276 Ill. App. 3d 402, 409 (1995). Where the evidence is conflicting, it is the prerogative of the trier of fact to ascertain the truth and resolve minor discrepancies in the testimony of the witnesses. *People v. Lovings*, 275 Ill. App. 3d 19, 22 (1995). Nevertheless, despite the deference accorded to a jury's determination of guilt, we are mindful that we have a duty to set aside a conviction when the evidence raises a reasonable doubt of the defendant's guilt. *People v. Schott*, 145 Ill. 2d 188, 206 (1991).

■ Section 19—1(a) of the Criminal Code of 1961 (Criminal Code) defines the offense of burglary as follows:

> "A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code, nor the offense of residential burglary as defined in Section 19—3 hereof." 720 ILCS 5/19—1(a) (West 1994).

Section 19—3(a) of the Criminal Code defines the offense of residential burglary as follows:

> "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19—3(a) (West 1994).

According to the supreme court, the offenses of residential burglary and burglary are mutually exclusive, *i.e.*, residential burglary can be committed only in a dwelling place, whereas burglary cannot. *People v. Childress*, 158 Ill. 2d 275, 302 (1994).

Thus, if defendant committed the offense of residential burglary, he could not have committed the offense of burglary. See *Childress*, 158 Ill. 2d at 302. According to defendant, he committed the offense of residential burglary because he knowingly and without authority entered the dwelling place of another. Defendant therefore appears to adopt the unorthodox position that although he committed an offense, it was not the offense of burglary. The issue before us, therefore, is whether defendant entered the "dwelling place of another" for purposes of the residential burglary statute. If he did, then he committed the offense of residential burglary and, according to *Childress*, could not have committed the offense of burglary. See *Childress*, 158 Ill. 2d at 302.

■ Section 2—6(b) of the Criminal Code defines "dwelling" for the purposes of the residential burglary statute. It provides:

"For the purposes of Section 19—3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2—6(b) (West 1994).

Subsection (b) was added to section 2—6 in 1987. See Pub. Act 84—1289, eff. January 1, 1987 (amending Ill. Rev. Stat. 1985, ch. 38, par. 2—6 (now 720 ILCS 5/2—6 (West 1994))). Prior to this amendment, our supreme court held that whether a structure constituted a "dwelling" depended on how it was used, rather than on the nature of it. *People v. Bales*, 108 Ill. 2d 182, 190 (1985).

In *People v. Thomas*, 137 Ill. 2d 500 (1990), the supreme court considered whether the defendant was properly charged with burglary rather than residential burglary. In that case, the defendant killed the victim in her garage when he attempted to steal perfume products located in the garage. The garage was part of a multiunit structure; all of the living units and garage units were attached and under the same roof. Based on these facts, the defendant argued that he should have been charged with residential burglary. The supreme court disagreed and held that "[a] garage, at least in this instance, whether attached to the various living units or not, cannot be deemed a residence or living quarters." *Thomas*, 137 Ill. 2d at 519.

Although *Thomas* held that the garage was not a dwelling for purposes of the residential burglary statute, it emphasized it was not creating a *per se* rule that an attached garage cannot be a dwelling. *Thomas* couched its opinion in language limiting its holding to garages attached to multiunit structures. *Thomas* stated that "[w]e hold *here* that an attached garage *is not necessarily* a 'dwelling' within the meaning of the residential burglary statute" and that "[a]

garage, *at least in this instance,* whether attached to the various living units or not, cannot be deemed a residence or living quarters." (Emphasis added.) 137 Ill. 2d at 519. *Thomas* also stated that its decision was not "necessarily inconsistent with the reasoning" of *People v. Dawson,* 116 Ill. App. 3d 672 (1983). *Thomas,* 137 Ill. 2d at 520. *Dawson* found that the defendant had entered a dwelling by breaking the close of the garage, because the house and garage were attached with one roof, one foundation, and a connecting door. *Dawson,* 116 Ill. App. 3d at 675.

Despite this emphasis that *Thomas* was not creating a *per se* rule, the appellate court remains split over whether *Thomas* did create a *per se* rule. Based on its reading of *Thomas,* the first district, fifth division, has held that a garage, whether attached to single or multiple living units, is not a residence or living quarters and thus is not a dwelling for purposes of the residential burglary statute. *People v. Mata,* 243 Ill. App. 3d 365, 368 (1993); see also *People v. Smith,* 209 Ill. App. 3d 1091, 1095 (1991) (stating in *dicta* that an attached garage used for storage is not a dwelling).

This district has interpreted *Thomas* differently. In *People v. Cunningham,* 265 Ill. App. 3d 3 (1994), we held that an attached garage of a single-family residence, which leads directly into a room of the residence, is a dwelling for purposes of the residential burglary statute, and the State need not prove that anyone was actually "living" in the garage. See 265 Ill. App. 3d at 9; see also *People v. Silva,* 256 Ill. App. 3d 414, 420 (1993) (first district, second division, stating that "[i]n what we believe to be a misreading of *Thomas,* another division of this district [the *Mata* court] has held that a garage, whether attached or not, as a matter of law does not constitute a dwelling for the purpose of the residential burglary statute"). In support of its holding, *Cunningham* stated that *Thomas'* reference to the holding of *Dawson* and its reliance on *Bales* indicated *Thomas'* acceptance of the reasoning of those cases. *Cunningham,* 265 Ill. App. 3d at 9. According to *Cunningham,* by accepting the reasoning of these cases, *Thomas* demonstrated it did not intend to abrogate the general rule that an attached garage of a single-family residence, which leads directly into a room of the residence, is a dwelling for purposes of the residential burglary statute. 265 Ill. App. 3d at 9.

■ In our view, *Cunningham*'s reasoning remains persuasive. The specific holding of *Thomas* is that an attached garage to a multiunit structure is not a dwelling for purposes of the residential burglary statute. *Thomas,* 137 Ill. 2d at 519-20. *Thomas'* reference to the holding of *Dawson* indicated its acceptance of the reasoning of that case. As noted, *Dawson* found that the defendant had entered a dwelling

by breaking the close of the garage, because the house and garage were attached with one roof, one foundation, and a connecting door. *Dawson*, 116 Ill. App. 3d at 675. Thus, *Thomas* merely set forth an exception to the general rule that attached garages are part of a dwelling; it did not abrogate the general rule that an attached garage of a single-family residence, which leads directly into a room of the house, is a dwelling for purposes of the residential burglary statute. See *Cunningham*, 265 Ill. App. 3d at 8.

We note that *Cunningham*'s interpretation of *Thomas* is consistent with the purpose of the residential burglary statute. The residential burglary statute was enacted to deter the unlawful entry into dwellings and thereby protect the privacy and sanctity of the home. *Bales*, 108 Ill. 2d at 191-93. These concerns are implicated where a defendant enters the attached garage of a single-family residence which leads directly into the residence.

Applying *Cunningham* to the present case, we conclude that the evidence established that defendant unlawfully entered the dwelling place of another. The undisputed evidence established that defendant entered an attached garage of the Wilmarths' single-family home. The inside door of the garage led directly into the laundry room. Based on these facts, defendant entered a "dwelling place of another" for purposes of the residential burglary statute. See *Cunningham*, 265 Ill. App. 3d at 9. The facts that the garage was used to store tools, lawn mowers, and yard tools and that the Wilmarths' children sometimes slept in the garage further support our conclusion.

By unlawfully entering the dwelling place of another with the intent to commit therein a felony, defendant committed the offense of residential burglary. See 720 ILCS 5/19—3 (West 1994). Defendant could not have committed the offense of burglary, because the offenses of residential burglary and burglary are mutually exclusive. See *Childress*, 158 Ill. 2d at 302. As a matter of law, therefore, a rational trier of fact could not have found defendant guilty of burglary beyond a reasonable doubt. Accordingly, we reverse defendant's conviction.

Furthermore, we note and reject the State's argument that *Cunningham* did not establish, as a *per se* rule, that an attached garage of a single-family residence, which leads directly into a room of the residence, is a part of a dwelling. In our view, *Cunningham* did establish such a general rule, and we adhere to it today.

We have one final comment. As noted, the supreme court in *Childress* held that the offenses of residential burglary and burglary are mutually exclusive. 158 Ill. 2d at 302. In other words, residential bur-

glary can be committed only in a dwelling place, whereas burglary cannot. *Childress*, 158 Ill. 2d at 302. *Childress* therefore appears to overturn our earlier decision in *People v. Edgeston*, 243 Ill. App. 3d 1 (1993), where we held that the State has the authority to charge and prosecute a defendant with burglary even if the building the defendant entered happened to be a dwelling for purposes of the residential burglary statute. See *Edgeston*, 243 Ill. App. 3d at 10-11.

Because we conclude that defendant could not have been found guilty of burglary beyond a reasonable doubt, and accordingly reverse his conviction on this ground, we need not address defendant's remaining contentions on appeal.

For the foregoing reasons, the judgment of the circuit court of Ogle County is reversed.

Reversed.

THOMAS, J., concurs.

JUSTICE GEIGER, specially concurring:

Although I agree that the decision in the present case is mandated by the holding in *People v. Childress*, 158 Ill. 2d 275, 302 (1994), I write separately to express my concern with a rule of law that treats the offenses of burglary and residential burglary as mutually exclusive. Such a rule of law overturns the long judicially recognized principle that burglary is a lesser included offense of residential burglary. See *People v. Edgeston*, 243 Ill. App. 3d 1, 10 (1993); *People v. Johnson*, 129 Ill. App. 3d 399, 401 (1984).

In *People v. Edgeston*, 243 Ill. App. 3d 1 (1993), this court carefully analyzed the precise question presented here, namely, whether the State has the discretion to charge and convict a defendant of the less serious offense of burglary, even in those instances where the defendant's conduct might also constitute the more serious offense of residential burglary. The defendant in *Edgeston* was charged with and convicted of burglary after he and a friend broke into a private residence and killed the woman who lived there. *Edgeston*, 243 Ill. App. 3d at 5-6. On appeal, the defendant contended that the State's evidence showed he committed the crime of residential burglary rather than burglary and that the two offenses were completely separate, distinct, and mutually exclusive. The defendant argued, as does the defendant in the present case, that burglary is not a lesser included offense of residential burglary and that he could not be convicted of burglary when he committed the offense of residential burglary. *Edgeston*, 243 Ill. App. 3d at 9.

This court rejected that argument, ruling that while burglary and residential burglary are distinct and different crimes, the State retains the authority to charge a defendant with burglary even when the alleged conduct also satisfies the elements of residential burglary. *Edgeston*, 243 Ill. App. 3d at 10. In so ruling, this court examined the language of *People v. Bales*, 108 Ill. 2d 182 (1985), and noted that under the burglary statute (720 ILCS 5/19—1 (West 1994)), a person commits burglary when he unlawfully enters, among other structures, a "building." This court determined that while a residential home is certainly considered a "dwelling" for purposes of residential burglary, it also fell within the definition of a building under the burglary statute. *Edgeston*, 243 Ill. App. 3d at 9-10. This court therefore concluded that a defendant who commits residential burglary, necessarily commits burglary, and that it was not the legislature's intent to prohibit the State from charging a defendant with the lesser offense of burglary, simply because the "building" entered into happened to be a dwelling place. *Edgeston*, 243 Ill. App. 3d at 11.

In *Edgeston*, this court expressly acknowledged the statutory language within the burglary section stating that burglary shall not include "the offense of residential burglary" as defined in section 19—3 (720 ILCS 5/19—1 (West 1994)), but concluded that this language did not mean that the State could not, in its discretion, choose to charge a defendant with burglary rather than the more serious offense of residential burglary. *Edgeston*, 243 Ill. App. 3d at 10. In making this determination, this court relied on the first district case of *People v. Johnson*, 129 Ill. App. 3d 399, 401 (1984), wherein the court held that such statutory language was meant only to direct the State towards charging the more serious offense of residential burglary when the circumstances permitted, commenting:

> "[S]uch language seems to indicate no more than an admonition that when a dwelling unit is involved, the appropriate charge is residential burglary." *Johnson*, 129 Ill. App. 3d at 401.

The *Johnson* court noted that one cannot commit the offense of residential burglary without committing the offense of burglary and that such statutory language was not meant to hinder the State's discretion in determining whether to charge a defendant with residential burglary or the lesser included offense of burglary. *Johnson*, 129 Ill. App. 3d at 401.

Our supreme court's holding in *People v. Childress*, 158 Ill. 2d 275, 302 (1994), clearly overrules these decisions and declares burglary and residential burglary as mutually exclusive offenses:

> "As the defendant observes, the two offenses [of burglary and res-

idential burglary] are mutually exclusive. Residential burglary can be committed only in dwelling places, while simple burglary cannot occur in a dwelling place. The victim in the present case was attacked and killed in her own home, and thus the defendant could not have been guilty of burglary." *Childress*, 158 Ill. 2d at 302.

The offense of burglary, therefore, can no longer be charged when the burglary occurs in a residential dwelling.

The problem, however, is that the law regarding what constitutes a "dwelling" for purposes of residential burglary is, in many cases, unclear. The present case is an excellent example of this problem: In this district, as well as in the fourth district, a garage attached to a single family home is considered a "dwelling" for purposes of the residential burglary statute. See *People v. Cunningham*, 265 Ill. App. 3d 3, 9 (1994); *People v. Dawson*, 116 Ill. App. 3d 672, 675 (1983). However, in the first district, an attached garage is *not* a "dwelling" for purposes of the residential burglary statute. See *People v. Mata*, 243 Ill. App. 3d 365, 368 (1993); *People v. Smith*, 209 Ill. App. 3d 1091, 1095 (1991). Therefore, the prosecutor who is faced with charging a defendant is placed in the unenviable position of attempting to ascertain which definition of "dwelling" the trial and appellate courts will use.

In the instant case, the State apparently determined that the attached garage was not a "dwelling." Therefore, the State charged the defendant with the lesser offense of burglary, and the defendant was convicted. However, since this court has determined that an attached garage is considered a dwelling, we are now compelled to overturn the defendant's conviction.

Although the offenses of burglary and residential burglary are distinct, logic would suggest that the former is necessarily a lesser included offense of the latter. The fact that the State chose to pursue the less serious offense should not provide the defendant grounds for reversal.