MAUREEN GRADY, Plaintiff-Appellant, v. RICHARD SIKORSKI, Defendant-Appellee.

First District (6th Division)   No. 1—03—2397

Opinion filed June 18, 2004.

Sullivan & Sullivan, of Rolling Meadows (Gerald J. Sullivan, of counsel), for appellant.

Douglas W. Graham, of Chicago, for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Maureen Grady appeals from the trial court's judgment in favor of defendant Richard Sikorski. Because we find that the Residential Real Property Disclosure Act (765 ILCS 77/1 *et seq.* (West 1998)) (the Act) does not apply to a transaction in which the only structure on the property is an uninhabitable building, we affirm the judgment for defendant.

In June 2001, the parties entered into a contract under which Grady would purchase from Sikorski property at 2938 North Damen Avenue in Chicago. The lot included a two-story structure that Grady intended to demolish to make way for construction of a multiple-unit condominium building. Before signing the contract, Grady toured the existing building with Sikorski's real estate agent, Oscar Gaytan of Casa Perez Real Estate Company. Grady testified that the structure had been "totally stripped" of its fixtures. She stated that the building lacked cabinets, toilets, appliances, lighting, a furnace, a water heater and other amenities.

After purchasing the property, Grady had the existing building demolished, and workers prepared to pour the foundation of the new structure. Grady's general contractor ordered a test of the soil and informed Grady that any building erected on the property would

require the support of caissons. A three-unit condominium building was constructed on the site using pylons in the foundation. Grady alleged that as a result of the soil condition, she incurred $59,040 in additional costs, including the foundation reinforcements, soil testing and engineering work, and accrued interest on her construction loan.

Sikorski testified that when he bought the property in September 1999, he had planned to demolish the structure and develop the lot. In April 2000, Sikorski ordered and received a soil test report stating that the soil was soft to a depth of 27 feet. Sikorski decided not to build on the lot. In the sale to Grady, Sikorski did not complete a residential real estate disclosure report pursuant to the Act, which would have required Sikorski to indicate that he was aware of a material defect in the stability of the land. Sikorski does not deny his knowledge of the soil condition, and he testified that he lowered his asking price for the property because of it.

Bernard Kash, Sikorski's attorney, testified that he did not prepare a disclosure report for the sale to Grady because the lot "was being sold as vacant property" and the structure was unoccupied. Gaytan testified that he did not prepare a disclosure report because after consulting with colleagues, he learned that because of the structure's condition, the property sale should be treated as that of a vacant lot, a transaction that would not require such a report.

Grady filed a multiple-count complaint against Sikorski, Gaytan and Casa Perez Real Estate. Grady voluntarily dismissed several counts prior to trial, including all claims against Gaytan and Casa Perez Real Estate. Grady and Sikorski proceeded to a bench trial on count I of Grady's complaint, in which she alleged that Sikorski violated the Act because he did not disclose known material defects in the property. In a written order, the trial court entered judgment for Sikorski, finding that the Act applied to the transaction but that Sikorski did not knowingly violate the statute because he provided Gaytan with a copy of the soil test report.

On appeal, Grady contends that the Act applied to her purchase of 2938 North Damen Avenue and that under the statute, Sikorski was required to provide her with a residential real estate disclosure form. Sikorski responds that although the trial court found that the Act applied to the sale, the transaction involved uninhabited property being sold as vacant land and therefore was not subject to the Act's provisions.

Therefore, the scope of the Act is at issue. The construction of a statute is a question of law, which we review *de novo*. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508, 804 N.E.2d 499, 505 (2004). In attempting to divine a statute's meaning, the intent of the

legislature is best ascertained by examining the language of the statute itself, and where the language is clear and unambiguous, there is no need to resort to other aids of statutory construction, and courts must give effect to the statute as written, without applying exceptions, limitations or conditions that the legislature did not express. *In re Andrea F.*, 208 Ill. 2d 148, 159-60, 802 N.E.2d 782, 789 (2003).

■ Section 5 of the Act defines "residential real property" as "real property improved with not less than one nor more than 4 residential dwelling units." 765 ILCS 77/5 (West 1998). Grady argues that the Act applies to her purchase of the lot because a house had been built on the property; thus, the land fit the description of "residential real property." While Grady acknowledges that the structure was stripped of its fixtures at the time of the sale, she contends that the "character of the property remained residential." Grady asserts that the Act does not limit the definition of "residential real property" to property that has been improved with a habitable living space.

That reading is contrary to the Act's definition of "residential real property," described as property improved with between one and four "residential dwelling units." In the context of other statutes, this court has found "dwelling unit" to reflect the current or intended future use of a space as a residence.[1] Here, Grady does not dispute that the structure on the property was not habitable and would not be made liveable in the future.

Our research has failed to unearth any cases that address whether the Act applies to the sale of property that includes an uninhabitable building. This lack of precedent is logical, given that the Act expressly states that its provisions apply to residential real property and also defines that term. While no court has addressed the Act's definition of "residential real property," it is noteworthy that each case already decided under the Act has involved the sale of a home or condominium that the buyers intend to use as a residence or rent to another party

---

[1]See, *e.g.*, *Meyer v. Cohen*, 260 Ill. App. 3d 351, 358, 632 N.E.2d 22, 27 (1993) (interpreting "dwelling unit" under Chicago landlord and tenant ordinance as "part of a structure which *can* be used as a home, residence or sleeping place, regardless of whether it is being employed as such" (emphasis in original)). See gener. 'ly *People v. Silva*, 256 Ill. App. 3d 414, 420-21, 628 N.E.2d 948, 952-53 (1993) (finding that unoccupied basement and first-floor apartments undergoing renovation and used for storage fit definition of "dwelling" under residential burglary statute); *People v. Smith*, 209 Ill. App. 3d 1091, 1096, 568 N.E.2d 417, 420 (1991) (finding that vacation home is "dwelling" under residential burglary statute; key inquiry in defining "dwelling" is "the intent of the owner to reside in the building within a reasonable period of time after his absence").

as living quarters. *Allstate Insurance Co. v. Lane*, 345 Ill. App. 3d 547, 803 N.E.2d 102 (2003); *CNA Insurance Co. v. DiPaulo*, 342 Ill. App. 3d 440, 794 N.E.2d 965 (2003); *Penn v. Gerig*, 334 Ill. App. 3d 345, 778 N.E.2d 325 (2002); *Hogan v. Adams*, 333 Ill. App. 3d 141, 775 N.E.2d 217 (2002); *Coughlin v. Gustafson*, 332 Ill. App. 3d 406, 772 N.E.2d 864 (2002); *Rolando v. Pence*, 331 Ill. App. 3d 40, 769 N.E.2d 1108 (2002); *Curtis Investment Firm, Ltd. Partnership v. Schuch*, 321 Ill. App. 3d 197, 746 N.E.2d 1233 (2001); *Denault v. Cote*, 319 Ill. App. 3d 886, 746 N.E.2d 765 (2001); *Provenzale v. Forister*, 318 Ill. App. 3d 869, 743 N.E.2d 676 (2001); *King v. Ashbrook*, 313 Ill. App. 3d 1040, 732 N.E.2d 621 (2000); *Miller v. Bizzell*, 311 Ill. App. 3d 971, 726 N.E.2d 175 (2000); *Carrera v. Smith*, 305 Ill. App. 3d 1079, 713 N.E.2d 1282 (1999); *Woods v. Pence*, 303 Ill. App. 3d 573, 708 N.E.2d 563 (1999); *Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 702 N.E.2d 265 (1998); *Washington Courte Condominium Ass'n-Four v. Washington Golf-Corp.*, 267 Ill. App. 3d 790, 643 N.E.2d 199 (1994). Furthermore, although the Act is not ambiguous, and this court therefore is not compelled to use methods of statutory construction to ascertain its meaning, the Act's legislative history is illustrative. Discussing House Bill 358, which became Public Act 90—383 and made several amendments to the Act effective January 1, 1998, a legislator noted that the Act applied to sales of property in Illinois, "specifically homes." 90th Ill. Gen. Assem., House Proceedings, May 20, 1997, at 5-6 (statements of Representative Novak).

We agree with Grady that the purpose of the Act is to provide prospective buyers of residential property with information regarding the property's condition. However, we do not find that fact furthers Grady's theory. Grady did not seek information about the condition of the once-residential structure that stood on the property; rather, her lawsuit involves a condition of the land itself.

Moreover, Grady's inclusive characterization of the term "residential real property" would extend the Act beyond its intended reach and render the statute meaningless by applying its provisions to the sale of any property that includes a building that once served as a residence. The Act requires the seller of "residential real property" to complete and deliver to the prospective buyer a disclosure form indicating the seller's knowledge of material defects in the property, such as basement flooding, foundational cracks, plumbing or electrical problems, unsafe concentrations of radon, asbestos or other chemicals, infestations of termites or other insects, and other conditions listed in section 35 of the Act. 765 ILCS 77/20, 35 (West 1998). If, as in the instant case, the buyer of the property intends to destroy the structure, the Act's disclosure requirements serve no useful purpose.

■ Although the trial court found that the Act applied but ruled that Sikorski did not violate the statute, this court can affirm the trial court's judgment on any basis in the record. *Inland Land Appreciation Fund, L.P. v. County of Kane*, 344 Ill. App. 3d 720, 726, 800 N.E.2d 1232, 1237 (2003). The Act does not require that a residential real estate disclosure form be completed for the sale of property that includes an uninhabitable structure. Because 2938 North Damen Avenue did not constitute "residential real property" as defined in the Act, the statute did not apply to the transaction between Grady and Sikorski. Accordingly, the judgment for Sikorski is affirmed. Given that conclusion, we need not consider Grady's remaining assertions.

Affirmed.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.