(No. 72037.—

DIX MUTUAL INSURANCE COMPANY, as Subrogee of Roy Mitchell Estate, Appellee, v. TERRENCE LaFRAMBOISE, Appellant.

*Opinion filed July 30, 1992.*

316

FREEMAN, J., concurring.

HEIPLE, J., dissenting.

John A. Beyer and Steven D. Ziegler, of Satter, Beyer & Spires, of Pontiac, for appellant.

Monica E. Rackauskas, Mark E. Condon and Peter W. Schoonmaker, of Condon & Cook, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Dix Mutual Insurance Company (insurance company) paid its insured (landlord) $40,579 for a fire loss on certain real property. The insurance company, by way of subrogation, seeks to recover the $40,579 from Terrence LaFramboise (tenant) because he allegedly caused the fire loss due to his negligence. The trial court dismissed the insurance company's first-amended complaint for failure to state a cause of action. The trial court found that the parties did not intend for the tenant to be liable for fire damage to the real property and that the tenant was a co-insured under the insurance company's insurance policy. The appellate court reversed, reinstated the first-amended complaint and remanded the cause for further proceedings. We allowed the tenant's petition for leave to appeal. (134 Ill. 2d R. 315.) We reverse.

The unique facts of this case compel us to include the entire lease, which, in words and figures, is as follows:

"LEASE AGREEMENT

This Lease is made between Terry LaFramboise, tenant and acting landlord, J.S. Ludwig.

The house is leased beginning September 15, 1986 through September 15, 1987 for $325.00 per month. This amount is payable on the 15 [*sic*] of the month.

TERMS:

(A) $325.00 deposit has been made and will be considered the last month's rent of the year.

(B) The Tenant is to furnish their [*sic*] own utilities.

(C) The Tenant is to mow and keep the yard and area around the house neat at all times and the farm buildings.

(D) The Tenant will not xxxxxxxxxxxx [*sic*] in walls, paint, or make any additions to the home that are permanent without approval of the Landlord.

(E) The Tenant will assume their [*sic*] own risk for their [*sic*] personal property and Landlord, J.S. Ludwig, will not be responsible for fire, wind, or water damage.

DESCRIPTION:

The house is located on the Mitchell Farm in Vermilion County, Pilot township.

| TENANT: | LANDLORD: |
|---|---|
| s/   Terry LaFramboise | s/   J.S. Ludwig |
| Date:   9-16-86 | Date:   9-15-86" |

During the term of the lease, the landlord maintained fire insurance coverage on the real property from the insurance company.

During the one-year term, the tenant, with the landlord's approval, attempted to strip the paint from the exterior of the property with a power stripper, which removes paint by heat application. During this process, the house was damaged by fire. The landlord filed a claim with the insurance company and was paid $40,579 for the loss. The insurance company then brought this subrogation action against the tenant to recover the amount it paid to the landlord for the fire loss. In its complaint, the insurance company alleged that the tenant was negligent in his use of the power stripper. The issue before this court is whether the insurance company's first-amended complaint states a cause of action in subrogation.

When the legal sufficiency of a complaint is challenged by a motion to dismiss, all well-pleaded facts in the complaint are to be taken as true. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.) On review, we must determine whether the well-pleaded allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth

a cause of action upon which relief may be granted. *Burdinie*, 139 Ill. 2d 501.

The doctrine of subrogation is a creature of chancery. It is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid. (34 Ill. L. & Prac. *Subrogation* §2 (1958).) The right of subrogation is an equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. (34 Ill. L. & Prac. *Subrogation* §2 (1958).) Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. (34 Ill. L. & Prac. *Subrogation* §6 (1958).) There is no general rule which can be laid down to determine whether a right of subrogation exists since this right depends upon the equities of each particular case. See 34 Ill. L. & Prac. *Subrogation* §6 (1958).

One who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce. (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 397.) Consequently, in the case at bar, the insurance company may assert a right of subrogation against the tenant for the fire damage if: (1) the landlord could maintain a cause of action against the tenant and (2) it would be equitable to allow the insurance company to enforce a right of subrogation against the tenant.

With these principles in mind, we turn to the case at bar. Although a tenant is generally liable for fire damage caused to the leased premises by his negligence, if the parties intended to exculpate the tenant from negligently caused fire damage, their intent will be enforced. (*One Hundred South Wacker Drive, Inc. v. Szabo Food Ser-*

*vice, Inc.* (1975), 60 Ill. 2d 312; *Stein v. Yarnall-Todd Chevrolet, Inc.* (1968), 41 Ill. 2d 32; *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393.) The lease between the landlord and the tenant must be interpreted as a whole so as to give effect to the intent of the parties. *Stein,* 41 Ill. 2d at 35.

In the instant case, the insurance company contends that the tenant is liable for negligently caused fire damage because the lease does not contain a provision expressly relieving the tenant of this liability. This argument, however, is without merit. In *Cerny-Pickas,* 7 Ill. 2d at 396, this court stated:

> "[B]ecause the contingency was not covered by express language, it does not follow that the instrument may not, *when all of its provisions are considered,* show that *the parties themselves intended that the lessee should not be liable.* That determination is to be made upon a consideration of the instrument *as a whole.*" (Emphasis added.)

Accordingly, to ascertain the intent of the parties, we must consider the lease "as a whole."

Although the appellate court properly determined that *Cerny-Pickas* controls the instant case, it nevertheless failed to actually construe the lease "as a whole." Instead, the appellate court concluded that the absence of a "yield-back" provision revealed the parties' intent to place responsibility for negligently caused fire damage on the tenant. The appellate court determined that the tenant could only be relieved of this responsibility by an express provision in the lease. This, however, is not the law in Illinois. In Illinois, courts must look to the lease "as a whole" and the spirit of the agreement between the parties rather than search for an express provision in the lease. (See *One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 314; *Cerny-Pickas,* 7 Ill. 2d at 396.) In the instant case, even the most cursory examination of the lease "as a

whole" leads us to the obvious conclusion that neither the landlord nor the tenant was a sophisticated real estate mogul. It is hardly surprising to us that this particular lease does not contain a "yield-back" clause, as it is quite likely that the parties involved did not even know what a "yield-back" clause is.

The lease "as a whole" indicated that the tenant wanted shelter for one year for which he promised to pay a modest rent, furnish his own utilities, perform certain services on the farm, and assume the risk for his own personal property. The landlord agreed. Although one may be critical of the grammar, punctuation or even the style of the lease, it is difficult to find fault with the spirit of the document. In drafting this document, the landlord expressly placed minor duties on the tenant. "As a whole," the lease does not reflect any intent that, during the course of the one-year term, the tenant would be responsible for any fire damage to the realty and be required to pay an additional $40,579 to the landlord. Such a proposition would probably be beyond the wildest dreams of the parties.

The only paragraph which purportedly addresses the risks borne by either party is paragraph (E) which reads:

> "(E) The Tenant will assume their [*sic*] own risk for their [*sic*] personal property and Landlord, J.S. Ludwig, will not be responsible for fire, wind or water damage."

The insurance company contends that the last clause in this paragraph reveals the parties' intent to place responsibility for fire damage to the real property on the tenant. This argument persuaded the appellate court. However, the appellate court improperly read the last clause in isolation from the beginning part of the sentence. When read as one complete sentence, it is obvious to us that the parties intended to expressly place responsibility for his own personal property on the tenant and to exempt the landlord from liability for damage to the

*tenant's personal property*. See, *e.g.*, *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 843 (qualifying phrase is confined to the last antecedent).

We find it significant that the parties, who obviously considered the possibility of fire, expressly provided for the tenant's personal property but failed to do so with respect to the leased premises. This fact indicates to us that the parties intended for each to be responsible for his own property. This conclusion is supported by the landlord's conduct in taking out a fire insurance policy to cover the leased premises. As this court has noted before:

> " 'Fire insurers expect to pay fire losses for negligent fires and their rates are calculated upon that basis; indeed, we may well assume that a great majority of fires are caused by someone's negligence in a greater or lesser degree.' [Citations.]" *Stein*, 41 Ill. 2d at 38.

Under the insurance company's argument:

> "it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against fires due to other causes. *** The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires." (*Cerny-Pickas*, 7 Ill. 2d at 398.)

Therefore, we conclude that the parties intended that the tenant was not to be liable for any fire damage to the premises and that the landlord would look solely to the insurance as compensation for any fire damage to the premises.

In *Cerny-Pickas*, this court also noted:

> " 'The ancient law has been acquiesced in, and consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk enters into the amount of rent.' *** 'They necessarily consciously figured on the

rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect the tenant paid the cost of the fire insurance.' " *Cerny-Pickas*, 7 Ill. 2d at 398.

It is well settled that an insurer may not subrogate against its own insured or any person or entity who has the status of a co-insured under the insurance policy. (*Reich v. Tharp* (1987), 167 Ill. App. 3d 496, 501; 16 Couch on Insurance §61:137, at 197 (rev. 1983).) Under the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy. Both the landlord and tenant intended that the policy would cover any fire damage to the premises no matter who caused it, and to conclude otherwise would defeat the reasonable expectations of the parties.

We therefore conclude that, under the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience, the insurance company cannot maintain a subrogation action against the tenant under the facts of this case.

For the foregoing reasons, we reverse the appellate court and affirm the trial court's dismissal of the insurance company's first-amended complaint.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE FREEMAN, concurring:

I concur with that portion of the majority opinion which holds that the parties intended that the tenant be exonerated from liability for any fire damage to the premises and that the landlord might look solely to the insurance as compensation for any fire damage to the premises. I write only to express my disagreement with

the majority holding that under these facts the tenant attained "the status of a co-insured under the insurance policy" by the payment of rent. 149 Ill. 2d at 323.

Firstly, the result obtained by the majority opinion, *i.e.*, that the insurance company's subrogation action is not maintainable, does not require that we reach the issue of whether the tenant was a co-insured under the landlord's policy. In *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, this court held that a landlord's insurer's subrogation action was not maintainable against a tenant, without additionally concluding that the tenant was a co-insured under the landlord's insurance policy. *Cerny-Pickas* determined that such an action was not maintainable based simply on an examination of the parties' lease, which indicated that the tenant was to be exonerated from liability for fire loss, and certain "better reasoned decisions," which supported that result. (*Cerny-Pickas*, 7 Ill. 2d at 398.) These "better reasoned decisions" did not express the view that tenants gain the status of co-insureds by the payment of rent, but simply noted that tenants, thereby, bear the cost of insurance with their landlords. (See *Cerny-Pickas*, 7 Ill. 2d at 398.) In the instant case, as in *Cerny-Pickas*, the majority need only have looked to the parties' intent, as expressed by their lease, as well as basic subrogation principles, to conclude that the subrogation action was not maintainable.

Secondly, but more importantly, the majority's holding on this point sweeps too broadly, serving to eviscerate the common law principle that a tenant is responsible for damage to leased premises resulting from his own negligence. (See 49 Am. Jur. 2d *Landlord & Tenant* §§934, 935 (1970); Annot., 10 A.L.R.2d 1012, 1016 *et seq.* (1950); *Cerny-Pickas*, 7 Ill. 2d 393; *Fire Insurance Exchange v. Geekie* (1989), 179 Ill. App. 3d 679.) Indeed, the majority's holding, while stated to be limited to "the

particular facts of this case" (149 Ill. 2d at 323), serves
to elevate the status of every tenant to that of a co-in-
sured under his or her landlord's insurance policy, unless
expressly indicated otherwise. By logical extension, the
tenant might then also be considered a co-insured of the
landlord with respect to personal property or negligence
liability on the premises.

It is recognized that a tenant may attain the status of
a co-insured where the insured landlord covenants to
carry insurance for the benefit of the tenant. (See 16
Couch on Insurance §61:137 (rev. 1983).) Accordingly,
our appellate court has approached the issue by looking
at the express or implied terms of a lease, as well as sur-
rounding extrinsic evidence, to discern the parties'
agreement concerning the allocation of insurance bur-
dens. (Compare *Continental Casualty Co. v. Polk Broth-
ers, Inc.* (1983), 120 Ill. App. 3d 395 (terms of lease and
extrinsic evidence revealed that parties intended that
landlord, rather than tenant, obtain real property insur-
ance, resulting in nonviability of subrogation action); and
*Reich v. Tharp* (1987), 167 Ill. App. 3d 496 (express
terms of sale agreement provided that both parties were
to be named insureds on insurance policy, with the result
that party omitted from policy deemed a co-insured);
with *Fire Insurance Exchange*, 179 Ill. App. 3d 679 (no
term in lease concerning obligation to insure premises;
hence, tenant not a co-insured).) This approach is not to
say, however, that in all instances where a landlord has
insurance and a tenant pays rent, the tenant becomes a
co-insured. The better reasoned view, rather, requires
that we base our decision not on the mere existence of
insurance, but on the parties' agreement as to the alloca-
tion of that burden.

Notably, *Anderson v. Peters* (1986), 142 Ill. App. 3d
182, a decision holding that a tenant is considered a co-
insured, despite the absence of any indication of the par-

ties' intent, was expressly overruled by *Fire Insurance Exchange*, 179 Ill. App. 3d 679. The majority opinion returns us, *sub silentio*, to *Anderson*.

JUSTICE HEIPLE, dissenting:

This case involves an insurance company which paid the insured landlord for fire loss to rental property. The insurance company, by way of subrogation, now seeks to recover from the tenant for his negligence in causing the fire. The trial court, in dismissing the insurance company's complaint, determined that the landlord and tenant did not intend for the tenant to be liable for fire damage, ruling that the tenant was a co-insured with the landlord. The appellate court reversed and reinstated the complaint. The majority of this court reverses the appellate court and affirms the trial court.

This case presents the question of whether a tenant is absolved from liability for his negligence in burning down the landlord's premises. The majority holds that the tenant is absolved. The effect of this unfortunate decision is to make all tenants at any time and at any place co-insureds with their landlords. The only exception would be if the parties had a clear agreement to the contrary.

I have two objections to the majority opinion. The first objection is that the opinion makes factual findings which are, simply put, not correct. My second objection is that the new rule of law which it announces is bad public policy.

The majority opinion purports to find that the lease instrument, when read as a whole, contemplates that the tenant is a co-insured on the landlord's fire policy. A reading of the lease discloses that this is not the case. Whether read in its individual particulars or as a whole, the lease is utterly silent in this regard. As the lease is set out in full in the majority opinion, it is not necessary to repeat it here. An examination of the lease, however, discloses that nothing in it gives any indication that the parties intended

to absolve the tenant for his own negligent conduct or that the tenant was regarded as a co-insured with the landlord. The only exculpatory language of any kind is in favor of the landlord which provides in paragraph (E) that the tenant assumes the risk for his own personal property and that the landlord is not responsible for fire, wind or water damage.

In arriving at its finding, the majority points out that "neither the landlord nor the tenant was a sophisticated real estate mogul." (149 Ill. 2d at 321.) One may reasonably ask, If the parties had been sophisticated real estate moguls, would the result in this case be different? Would it matter if one were a greater mogul and the other a lesser mogul? Is this a useful concept?

The majority concludes, "Under the particular facts of this case, the tenant, by payment of rent, had contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy." Sad to say, there are no facts in this case, either particular or general, that would cause one to conclude that the tenant contributed to the payment of the insurance premium or expected to be treated as a co-insured. That assumption is as gratuitous as saying that the payment of rent included maid service and clean linens.

It is also worth noting that fire insurance is, generically speaking, casualty insurance. Since the landlord owns the building, he is the person at risk if the building burns down from whatever cause, be it lightning, faulty wiring, a bad furnace, or the negligent conduct of any person. Conceptually, liability insurance is different than casualty insurance. Liability insurance covers a person for his own negligent conduct. Regarding liability, the lease in this case clearly exculpated the landlord for liability for damage caused to the tenant's personal property. No similar language exculpated the tenant for negligently damaging the landlord's premises.

The fire insurance contract contemplated that the insurance company, by way of subrogation, could recover the loss paid from any responsible party other than the insured. In other words, the insurance company in that regard would occupy the same position as the insured himself. There is nothing in law to require an insured to look either first or only to his insurance carrier for recovery of loss caused by another's negligence. The landlord, in this case, could have sued the tenant directly. There is also nothing in law to require a landlord to carry fire insurance at all. How can it be said that a tenant is deemed to be a co-insured in a lease when the lease does not even mention or contemplate insurance? Suppose that the landlord in this case had not taken out an insurance policy. Would the majority say he was debarred from suing his tenant for negligently burning down the premises? That is to say, would the loss be shifted away from the negligent tenant and onto the guiltless landlord?

Other jurisdictions have also addressed the issue of when a tenant will be relieved from liability for negligently causing a fire in leased premises. The decisions from various jurisdictions can be divided into three categories: (1) absent an express agreement to the contrary the tenant is treated as a co-insured of the landlord and is not liable for negligently causing a fire; (2) absent an express agreement to the contrary the tenant is liable for negligently causing a fire; and (3) an express agreement is not required and the determination of whether to hold the tenant liable for negligently causing a fire must be ascertained from the lease as a whole.

The lead case which determined that a tenant should be treated as a co-insured, absent an express agreement to the contrary, is *Sutton v. Jondahl* (Okla. App. 1975), 532 P.2d 478. The reasons expressed for reaching this conclusion were that: (1) an insurance policy protects all property interest and both the tenant and landlord have insur-

able interests in the premises; (2) in reality the tenant pays for part of the insurance premium through the payment of rent; (3) the reasonable expectations of tenants is for the landlord to provide fire insurance which will cover them; and (4) equity calls for placing the risk of fire loss upon the insurer which has collected premiums for the risk, rather than upon the tenant, which is a party in privity with the landlord. *Sutton*, 532 P.2d at 482.

Several jurisdictions have followed *Sutton*. *Alaska Insurance Co. v. R C A Alaska Communications, Inc.* (Alaska 1981), 623 P.2d 1216; *Safeco Insurance Co. v. Weisgerber* (1989), 115 Idaho 428, 767 P.2d 271; *Reeder v. Reeder* (1984), 217 Neb. 120, 348 N.W.2d 832; *Safeco Insurance Co. v. Capri* (1985), 101 Nev. 429, 705 P.2d 659; *Monterey Corp. v. Hart* (1976), 216 Va. 843, 224 S.E.2d 142; *Liberty Mutual Fire Insurance Co. v. Auto Spring Supply Co.* (1976), 59 Cal. App. 3d 860, 131 Cal. Rptr. 211; *New Hampshire Insurance Group v. Labombard* (1986), 155 Mich. App. 369, 399 N.W.2d 527; *Fashion Place Investments, Ltd. v. Salt Lake County/Salt Lake County Mental Health* (Utah App. 1989), 776 P.2d 941; *Cascade Trailer Court v. Beeson* (1988), 50 Wash. App. 678, 749 P.2d 761.

The Supreme Court of Kentucky in *Britton v. Wooten* (Ky. 1991), 817 S.W.2d 443, recently addressed whether a tenant will be held liable for negligently causing a fire. In *Britton*, the court held that in order for a tenant to be exonerated from liability for negligently causing a fire, the lease must contain a clear and unequivocal expression stating such intent. In reaching this conclusion the *Britton* court noted that public policy disapproves of exculpatory agreements in derogation of tort liability and such an agreement should be found only if it is explicit. Similar conclusions were also reached in *Sears, Roebuck & Co. v. Poling* (1957), 248 Iowa 582, 81 N.W.2d 462; *Winkler v. Appalachian Amusement Co.* (1953), 238 N.C. 589, 79

S.E.2d 185; *Zoppi v. Traurig* (1990), 251 N.J. Super. 283, 598 A.2d 19; and *Galante v. Hathaway Bakeries, Inc.* (1958), 6 A.D.2d 142, 176 N.Y.S.2d 87. But *cf. Fireman's Insurance Co. v. Wheeler* (1991), 165 A.D.2d 141, 566 N.Y.S.2d 692.

Falling between these two views are the jurisdictions which do not require an express agreement to be in the lease. These jurisdictions determine whether or not a tenant is liable for his own negligence in causing a fire based upon the intent of the parties as evidenced from a reading of the lease as a whole. If the intent of the parties is unable to be ascertained, the common law rule placing liability upon the tenant for his negligent conduct is enforced. This court, prior to today's decision, clearly fell within this classification. (*Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393.) Other jurisdictions which have endorsed this view include *Neubauer v. Hostetter* (Iowa 1992), 485 N.W.2d 87; *Acquisto v. Hahn Enterprises, Inc.* (1980), 95 N.M. 193, 619 P.2d 1237; *Page v. Scott* (1978), 263 Ark. 684, 567 S.W.2d 101; and *Rock Springs Realty, Inc. v. Waid* (Mo. 1965), 392 S.W.2d 270.

In general, I believe that the public is better served if negligent actors are held responsible for the damage or injury they cause. While I would agree that parties to a lease may agree to exculpate a tenant for negligent conduct which damages the premises and that a lease may be drawn so as to regard the tenant as a co-insured, I cannot agree that the lease in this case contemplated any such thing. Further, I cannot agree that the mere payment of rent in the absence of other language should operate to exculpate a tenant who negligently causes damage to the premises.

For the reasons given, I respectfully dissent.