THIRD DIVISION

July 23, 2003

No. 1-02-3490

CNA INSURANCE COMPANY, as subrogee ) Appeal from the

of Michael Gregg and Kathy Gregg, ) Circuit Court of

) Cook County. 

Plaintiff-Appellant, ) 

) 

v. ) 

)

SILVIO DIPAULO and JUDY DIPAULO, ) Honorable

) James F. Henry,

Defendants-Appellees. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

Michael and Kathy Gregg entered into a real estate contract to buy a house from the defendants, Silvio and Judy DiPaulo.  When the Greggs moved in they began redecorating the house.  They made a heart-sinking discovery: termites.  The house was infested with termites.  CNA paid the Greggs for the costs of repair and replacement pursuant to their homeowner's policy.  Then CNA, as the Greggs' subrogee, sued the DiPaulos for common law fraud based on false statements and concealment.  

The trial judge granted summary judgment to the defendants, finding CNA could not subrogate to its insured's collateral contract rights.  The court relied entirely on our decision in 
State Farm General Insurance Co. v. Stewart
, 288 Ill. App. 3d 678, 681 N.E.2d 625 (1997).  We find 
Stewart
 does not control this case.  We reverse the trial court's order and remand for further proceedings.

FACTS

According to CNA's complaint, on or about March 6, 1998, the Greggs entered into a real estate contract to purchase from the defendants certain real property located at 102 Prospect Court, Prospect Heights, Illinois.  The parties agreed on a selling price of $465,000.  Defendants provided a Residential Real Property Disclosure Report indicating they were not aware of a current infestation of termites or wood boring insects or of a structural defect caused by previous infestations of termites or other wood boring insects.  During a house inspection on March 11, 1998, defendants made verbal representations to the Greggs denying any past or current termite infestation.  The Greggs' insurance policy through CNA, effective from May 7, 1998, through May 7, 1999, provided coverage for loss or damage caused by termite infestation.  The policy contained language whereby CNA obtained the Greggs' rights to recover against a third party if it paid for damage to the property.  The Greggs closed on the property on June 5, 1998.

On or about September 3, 1998, the Greggs discovered the property was infested with termites.  After removing some wallpaper and exposing the drywall, they found pinholes and tunnels caused by termites.  They also discovered patchwork on the drywall and other efforts to conceal the termite infestation.  CNA made payment pursuant to the homeowner's policy of $487,623.93 for repair and replacement costs and living expenses incurred during the repair.  CNA filed its subrogation claim, based on common law fraud, against the defendants.  The trial court entered summary judgment in favor of defendants.  

DECISION

There is no factual dispute here.  The question is whether the defendants are entitled to summary judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2000).  We review 
de
 
novo
 the trial court's grant of summary judgment to the defendants.  
Morris v. Margulis
, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001).  

The issue is whether to allow CNA to subrogate to its insured's claim for fraud against the defendants.  The right of subrogation is an equitable remedy that allows one who has involuntarily paid a debt or claim of another to succeed to the rights of the other with respect to that claim or debt.  
Dix Mutual Insurance Co. v. LaFramboise
, 149 Ill. 2d 314, 319, 597 N.E.2d 622 (1992).  The right of subrogation may be grounded in equity or may be founded on an express or implied agreement.  
Stewart
, 288 Ill. App. 3d at 686, citing 
Bost v. Paulson's Enterprises, Inc.
, 36 Ill. App. 3d 135, 139, 343 N.E.2d 168 (1976).  The doctrine rests on the principle that justice is attained by placing ultimate responsibility for the loss on the one against whom in good conscience it ought to fall.  
Dix Mutual Insurance Co.
, 149 Ill. 2d at 319.  Whether the right of subrogation exists depends on the equities of each case.  
Dix Mutual Insurance Co.
, 149 Ill. 2d at 319.  

A subrogee "steps into the shoes" of the person whose claim he has paid and may only enforce those rights which the latter could enforce.  
Continental Casualty Co. v. Polk Brothers, Inc.
, 120 Ill. App. 3d 395, 397, 457 N.E.2d 1271 (1983).  

In this case, CNA may assert a right of subrogation against the defendants if: (1) the Greggs could maintain a cause of action against the defendants and (2) it would be equitable to allow CNA to enforce a right of subrogation against the defendants.  
Dix Mutual Insurance Co.
, 149 Ill. 2d at 319.    

First, we examine the status of the Greggs' "shoes" which CNA seeks to step into.  That is, could the Greggs have sued the DiPaulos for common law fraud had they not sought coverage for their losses from CNA?  The answer is yes.

Sellers of real estate have a duty to disclose defects which could not be discovered on a reasonable and diligent inspection.  
Mitchell v. Skubiak
, 248 Ill. App. 3d 1000, 1005, 618 N.E.2d 1013 (1993).  While the seller's silence in not disclosing defects, standing alone, is not enough for a fraud action, there is enough when that silence is combined with active concealment.  That is what we held in 
Mitchell
, where the home buyers discovered various defects and damage to the property that were not obvious or were concealed during the plaintiffs' inspection.  The complaint alleged the sellers concealed the defects, kept silent, and made misrepresentations about them.  We found there were sufficient allegations of intentional false material statements reasonably relied on by the buyers to support the fraud complaint.  
Mitchell
, 248 Ill. App. 3d at 1004-06.  See also 
Posner v. Davis
, 76 Ill. App. 3d 638, 644, 395 N.E.2d 133 (1979) (finding of fraud supported where defendant-sellers actively concealed a flooding problem and water damage and said nothing about them).  In addition, a fraud claim may be based solely on a seller's false representation made in a disclosure report pursuant to the Residential Real Property Disclosure Act (765 ILCS 77/20 (West 1998)).  
Rolando v. Pence
, 331 Ill. App. 3d 40, 42, 769 N.E.2d 1108 (2002). 

In this case, CNA alleged the DiPaulos falsely said they were not aware of a termite infestation.  They said it in verbal statements to the Greggs and in the written disclosure report.  Their purpose, proven successful, was to induce the Greggs to buy the house.  The Greggs relied on the false statements and incurred damages as a result.  CNA has alleged common law fraud.  See 
Redarowicz v. Ohlendorf
, 92 Ill. 2d 171, 185-86, 441 N.E.2d 324 (1982).  

If the Greggs could sue the DiPaulos for fraud, it would appear to follow that their subrogee, CNA, could sue the DiPaulos.  But the trial court found our decision in 
Stewart
 was an insurmountable obstacle to CNA's lawsuit.

In 
Stewart
, Vito DeFrancesco contracted to sell an apartment building to Nancy Stewart.  After DeFrancesco delivered the deed and possession to Stewart, but before she paid him the full contract price, the building was destroyed by fire.  DeFrancesco collected insurance proceeds for the loss from his insurer, State Farm General.  Stewart made a claim against her insurer, Hartford Insurance Company, and collected on her policy.  State Farm General, as DeFrancesco's subrogee, sued Stewart, seeking to recover from the Hartford proceeds that part of the purchase price she had not yet paid to DeFrancesco.  The court, noting that State Farm General's liability to DeFrancesco had nothing to do with Stewart's obligation to pay the balance of the contract, held State Farm General had no right to be subrogated to the "collateral contract rights" of its insured.  
Stewart
, 288 Ill. App. 3d at 689.

The 
Stewart
 decision was grounded in a Minnesota Supreme Court decision, 
Board of Trustees of First Congregational Church of Austin v. Cream City Mutual Insurance Co.
, 255 Minn. 347, 96 N.W.2d 690 (1959).  There, the Church sold its property to the city of Austin under a contract.  There was a fire that destroyed the church.  Austin still owed the Church $75,000.  Cream City, the Church's insurance company, after paying on its policy, claimed it had a right to be subrogated to the Church's claim against Austin for the balance of the purchase price.  The court disagreed, holding Cream City could not be subrogated to collateral contract rights which its insured had against Austin.

There are major differences between 
Stewart
 and this case.  Those differences condemn the DiPaulos' position.  In fact, 
Stewart
 and 
Cream City
 support CNA's subrogation theory.

First, CNA is not trying to assert the Greggs' contract rights against the DiPaulos.  CNA alleges common law fraud, nothing else.  The same fraud the Greggs could have asserted against the DiPaulos.

Second, and more importantly, the 
Stewart
 and 
Cream City
 decisions involved fires that the defendants had nothing to do with.  No one suggested Nancy Stewart or the city of Austin was a wrongdoer.  The Minnesota court said, and 
Stewart
 reiterated:

"it is the universally accepted rule that an insurer may be subrogated to the insured's rights against any person 
wrongfully causing a compensable loss to the insured
." (Emphasis added.)  
Stewart
, 288 Ill. App. 3d at 688-89, quoting 
Cream City
, 255 Minn. at 353.

Further, in 
Stewart
, we said that although State Farm General paid DeFrancesco for his fire-related losses, that payment was independent of Stewart's contractual debt to DeFrancesco "insofar as Stewart did not cause those losses."  
Stewart
, 288 Ill. App. 3d at 690.

That, according to CNA's complaint, is exactly what happened in this case--the DiPaulos wrongfully caused the loss to the Greggs.

The DiPaulos cannot sidestep the cause of action by saying, as they do here, they did not cause the termite infestation.  That is not CNA's lawsuit.  The claim is the DiPaulos caused loss to the Greggs by concealing the infestation and making false statements about it.

The DiPaulos are right when they say if CNA were to succeed it could recover its payout to the Greggs and also keep the premiums it was paid for the policy.  That, they say, is a windfall for CNA.  Calling it a windfall is an exaggeration at best, spiced with a measure of gall.  It is the DiPaulos who would reap a windfall if they were allowed to commit fraud and keep the purchase price money.

CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.   
     

SOUTH, P.J., and HALL, J., concur.