NOTICE

Decision filed 07/25/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0122

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| ESL DELIVERY SERVICES COMPANY, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) Madison County. |
| | ) |
| v. | ) No. 04-L-389 |
| | ) |
| DELIVERY NETWORK, INC., and | ) |
| FI WAREHOUSE CORPORATION, | ) Honorable |
| | ) A. A. Matoesian, |
| Defendants and Counterplaintiffs-Appellants. | ) Judge, presiding. |

_____

PRESIDING JUSTICE STEWART delivered the opinion of the court:

The counterplaintiffs, Delivery Network, Inc., and FI Warehouse Corp. (collectively referred to as Delivery Network), appeal from an order of the circuit court of Madison County granting a summary judgment in favor of the counterdefendant, ESL Delivery Services Company (ESL). We reverse.

BACKGROUND

Delivery Network owned and operated a warehouse facility located in Granite City, Illinois. Beginning April 1, 2003, ESL entered into a lease agreement with Delivery Network for the storage of goods and the lease of office space inside the warehouse. The lease agreement between Delivery Network and ESL provided, in its entirety, as follows:

"Here is what we propose. It will cost about $1,000 to get some repairs done and such in order to make that workable. I will plan on the first month being that one thousand dollars. If you do not want to do it that way we could charge an additional $100.00 per month for the first year.

We will furnish:

1

Electricity

The one of two office spaces which you prefer

Hours of operation will be 8:00 a.m. to 4:30 p.m.

ESL will be responsible for:

Maintenance and operations of wall unit heater/cooler

Insurance for all ESL contents within the office

Price is $250.00 per month."

A handwritten note on the agreement stated: "Mike, we are proceeding with this. Beginning 1 April, $1250.00. Then $250.00/month thereafter. Steve 3/7"

In the evening on October 26, 2003, a fire started at the warehouse. The building's alarm system notified the fire department, and the building's sprinkler system activated. The Granite City fire department responded to the warehouse and, in a short period of time, appeared to have extinguished the fire. While the fire department was at the scene of the fire, someone deactivated the warehouse's alarm/sprinkler system. Six or seven hours after the fire department left the warehouse, during the early morning hours of October 27, 2003, the fire reignited. However, no one had reactivated the warehouse's alarm/sprinkler system. Therefore, the fire department did not receive an immediate alert from the building's fire alarm system, and the sprinklers did not activate when the fire reignited. At some point, someone noticed the reignited fire and notified the fire department, but when the firefighters finally returned the second time, they were unable to immediately control the fire. The fire burned for more than 10 hours. It destroyed Delivery Network's warehouse and the warehouse's contents, as well as an adjacent warehouse facility and its contents.

The owners of the adjacent warehouse, its warehouse tenants, and Delivery Network's own tenants filed lawsuits against Delivery Network, alleging that Delivery Network's negligence was the proximate cause of their fire damages. Specifically, they alleged that

2

Delivery Network's failure to reset the alarm/sprinkler system after the first fire was the proximate cause of the damage to their property which occurred when the fire reignited.

Delivery Network filed a counterclaim for contribution against ESL, alleging that ESL's negligent failure to properly operate and maintain its wall unit heaters in its leased office space was a proximate cause of the fire. Delivery Network sought contribution from ESL in the event any third parties obtained a judgment against Delivery Network as a result of the fire damage. The circuit court consolidated all the claims into one proceeding.

Delivery Network's liability insurance carrier settled all the claims against Delivery Network. The only remaining claim was Delivery Network's counterclaim for contribution against ESL. Delivery Network's liability insurance carrier asserted a subrogation right to seek contribution from ESL. ESL filed a motion for a summary judgment on the contribution counterclaim, arguing Delivery Network could not maintain a contribution action against ESL for fire damage even if the fire had started as a result of ESL's negligence. Therefore, ESL concluded that the insurance company did not have a right of subrogation to assert. On January 5, 2007, the circuit court granted ESL's motion for a summary judgment, and Delivery Network appeals the circuit court's judgment.

## DISCUSSION

A party is entitled to a summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). Our review of a circuit court's summary judgment is *de novo*. *Sun Life Assurance Co. of Canada v. Manna*, 227 Ill. 2d 128, 136, 879 N.E.2d 320, 325 (2007). In the present case, there are material issues of fact, and ESL is not entitled to a judgment as a matter of law. Therefore, we reverse the circuit court's summary judgment and remand this cause for further proceedings.

3

This case presents the issue of whether a landlord's liability insurance carrier has a subrogation right to seek contribution against a tenant where the tenant's negligence causes damage to the real and personal property of third parties. Section 2(a) of the Joint Tortfeasor Contribution Act (740 ILCS 100/2(a) (West 2006)) establishes a right of contribution between two or more persons who are subject to liability in tort arising out of the same injury to property. Under this statutory provision, Delivery Network had a right to seek contribution from ESL to the extent of ESL's prorated share of common liability. Delivery Network's liability insurance carrier paid the liability on behalf of Delivery Network and, therefore, has a subrogation right to seek contribution from ESL for ESL's prorated share of the liability.

The circuit court's ruling that Delivery Network's liability insurer could not seek contribution from ESL was based entirely on the holding in *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 597 N.E.2d 622 (1992). We find *Dix* distinguishable from the facts of the present case.

In *Dix*, a landlord and a tenant entered into a lease of residential property, and the landlord maintained fire insurance on the property during the term of the lease. *Dix*, 149 Ill. 2d at 317-18, 597 N.E.2d at 624. The tenant attempted to remove exterior paint from the leased premises with a power stripper, which caused fire damage to the property. *Dix*, 149 Ill. 2d at 318, 597 N.E.2d at 624. The landlord's fire insurance company paid the landlord's claim for the fire damage, and the insurance company brought a subrogation action against the tenant for negligently causing the fire damage. *Dix*, 149 Ill. 2d at 318, 597 N.E.2d at 624. On appeal, the Illinois Supreme Court addressed the issue of whether the insurance company had a right of subrogation against the tenant. *Dix*, 149 Ill. 2d at 318, 597 N.E.2d at 624.

The Illinois Supreme Court began its analysis by noting that the basis of the insurance

4

company's claim was a subrogation right, *i.e.*, an "equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall." *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 624. The court stated that in order to assert a subrogation right, the insurance company must "step into the shoes of" its insured and may assert a subrogation right only if "(1) the landlord could maintain a cause of action against the tenant and (2) it would be equitable to allow the insurance company to enforce a right of subrogation against the tenant." *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 624-25.

In looking at whether the landlord could maintain a cause of action against the tenant, the court noted that "a tenant is generally liable for fire damage caused to the leased premises by his negligence" but that the parties may agree to exonerate the tenant from liability under the terms of the lease. *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 625. The court in *Dix* looked to the terms of the lease "as a whole" to determine whether the parties intended the lease "to exculpate the tenant from negligently caused fire damage." *Dix*, 149 Ill. 2d at 319-20, 597 N.E.2d at 625. Looking at the terms of the lease, the court concluded that the parties did not intend for the tenant to be responsible for any fire damage to the leased premises. *Dix*, 149 Ill. 2d at 321, 597 N.E.2d at 625.

The *Dix* court found it significant that under the terms of the lease, the tenant assumed the risk for his own personal property and the landlord was exempted from liability for damage to the tenant's personal property in the event of a fire, but the lease contained no provision for damage to the leased premises in the case of a fire. *Dix*, 149 Ill. 2d at 321-22, 597 N.E.2d at 626. Specifically, the only paragraph in the lease that addressed the issue of a loss in the event of a fire provided as follows:

> " '(E) The Tenant will assume their [*sic*] own risk for their [*sic*] personal property and Landlord, J.S. Ludwig, will not be responsible for fire, wind[,] or water

5

damage.' " *Dix*, 149 Ill. 2d at 321, 597 N.E.2d at 625-26. The *Dix* court, therefore, concluded that the parties intended for each party to be responsible for any fire damage to his own property. *Dix*, 149 Ill. 2d at 321-22, 597 N.E.2d at 626.

The court also stated that the fact that the landlord obtained a fire insurance policy on the premises was further evidence that the parties did not intend for the tenant to be responsible for fire damage to the landlord's property. *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626. The court noted that the cost of insurance on the leased premises is factored into the rent and that " ' "[i]n practical effect the tenant paid the cost of the fire insurance." ' " *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626 (quoting *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393, 398, 131 N.E.2d 100, 104 (1955) (quoting *General Mills, Inc. v. Goldman*, 184 F.2d 359, 366 (8th Cir. 1950))). The court cited the well-settled principle that an insurer may not subrogate against a coinsured, and the court held, "Under the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co[]insured under the insurance policy." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626. The court's decision to deny the insurance company the right to subrogation was based on "the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626.

The *Dix* decision was based on the particular facts of that case, and we find the facts of the present case distinguishable from the facts in *Dix*. In the present case, Delivery Network's insurance company did not seek a contribution claim for the fire damage to Delivery Network's own property. Instead, Delivery Network's contribution claims were only for damages to the property of third parties. The only claims Delivery Network filed against ESL were contribution claims for damage caused by ESL's negligence to the real and personal property at the neighboring warehouse and to goods warehoused at Delivery

6

Network's warehouse. Delivery Network did not seek damages for the leased premises as was the case in *Dix*.

The language of the *Dix* decision limits its application. The *Dix* court held that the tenant was a coinsured under the landlord's fire insurance policy because "[b]oth the landlord and tenant intended that the policy would cover any fire damage *to the premises*." (Emphasis added.) *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626. The *Dix* court did not address situations such as the present case where the tenant's negligence causes damage to the property and premises of third parties.

Nothing in the lease agreement indicates that the parties intended to exculpate ESL from fire damage to third parties caused by ESL's own negligence. There is no express exculpatory provision in the lease, and viewing the lease as a whole, we conclude there is no evidence that the parties intended the landlord to bear the burden of losses suffered by third parties as a result of the tenant's negligence. There is a provision in the lease with respect to ESL's responsibility to procure insurance covering the contents of its office space, but that provision makes no reference to third-party claims. Under the facts of the present case, we cannot find that ESL is a coinsured under Delivery Network's liability insurance coverage. There is no evidence in this record to support the holding that the parties intended Delivery Network's liability insurance to cover ESL's negligently caused damages to the property of others. We find that, under the terms of the lease, both parties remained responsible for any damages they caused to third parties through their own negligence.

As noted in *Dix*, an insurance company may assert a subrogation right if "(1) the landlord could maintain a cause of action against the tenant and (2) it would be equitable to allow the insurance company to enforce a right of subrogation against the tenant." *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 625. We hold that Delivery Network could maintain a contribution action against ESL for its prorated share of the common liability that resulted

7

from the fire, and we hold that it is equitable to allow Delivery Network's liability insurance carrier to seek contribution from ESL through its right of subrogation. There are triable issues of fact concerning whether ESL was negligent and, if so, the extent of its prorated share of the common liability. Accordingly, the circuit court erred in granting ESL a summary judgment on Direct Network's claim for contribution.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings.

Reversed; cause remanded.

GOLDENHERSH and WEXSTTEN, JJ., concur.

NO. 5-07-0122

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ESL DELIVERY SERVICES COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 04-L-389 |
| | ) | |
| DELIVERY NETWORK, INC., and | ) | |
| FI WAREHOUSE CORPORATION, | ) | Honorable |
| | ) | A. A. Matoesian, |
| Defendants and Counterplaintiffs-Appellants. | ) | Judge, presiding. |

**Opinion Filed**:      July 25, 2008

**Justices**:     Honorable Bruce D. Stewart, P.J.

Honorable Richard P. Goldenhersh, J., and
Honorable James M. Wexstten, J.,
Concur

**Attorneys for Appellants**     Karen L. Kendall, Craig L. Unrath, Stephen J. Heine, Adam J. Lagocki, Heyl, Royster, Voelker & Allen, 124 SW Adams Street, Suite 600, Bank One Building, Peoria, IL 61602-1352

**Attorneys for Appellee**     John L. McMullin, Esq., T. Michael Ward, Brown & James, P.C., 1010 Market Street, 20th Floor, St. Louis, MO 63101