# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3744

_____

The Weitz Company, LLC

*Plaintiff - Appellant*

v.

Lexington Insurance Company; Allied World Assurance Company (U.S.), Inc.;
Westchester Surplus Lines Insurance, Company; Essex Insurance Company;
Lloyds London, also known as Underwriters at Lloyds; John Doe, Various
unknown insurers hereby named John Doe Insurers

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 7, 2014
Filed: May 12, 2015

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

The Weitz Company appeals the district court's[1] adverse grant of summary judgment in favor of several insurance companies (collectively, the defendant insurers) on Weitz's claims for equitable subrogation and unjust enrichment. Unfortunately, this litigation, at best, has involved a confusing array of asserted and withdrawn causes of action and periodic infusions of new or changed facts and arguments. As best understood, Weitz, a party to a completed construction contract with a Hyatt Corporation affiliate (Hyatt), seeks to become subrogated through Hyatt, to insurance monies that were not, according to Weitz, properly paid to Hyatt by the defendant insurers for claims made to them by Hyatt, their insured. We find that Weitz's claims are both unsupported and unsupportable. Accordingly, we affirm.

## I.      BACKGROUND

In January 2001, Weitz contracted with Hyatt to build an assisted-living facility in Aventura, Florida. While the contract between Hyatt and Weitz required acquisition of mutually protective insurance coverages by both parties, this dispute involves both insurance coverages mandated by the construction agreement and, curiously, post-construction property damage policies issued only to Hyatt for Hyatt's benefit.

The project was completed in July 2003. In November 2003, Hyatt obtained the currently at issue post-construction insurance policies from defendants Allied and Lexington. They are part of a comprehensive series of policies between Hyatt, Lexington and Allied designed to cover numerous Hyatt properties in sundry locations throughout the country. As indicated, these policies did not come into being until after completion of the construction work performed by Weitz. As also indicated, Weitz was neither a party to these insurance contracts nor a third-party

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

beneficiary. The policies exclude from coverage damages due to faulty workmanship and mold, except to the extent that another covered loss results from the faulty workmanship–for instance, business interruption losses. The policies between Hyatt and the defendant insurers also give the insurers subrogation rights after they have made payment to Hyatt on any covered loss.

It is undisputed that the completed construction was defective in numerous ways. The first problem occurred with the care center construction. Hyatt notified two of the current defendant insurers, Lexington and Allied, of an insured loss. Hyatt described the loss as involving excessive moisture and mold growth. In July 2005, Hyatt submitted a proof of loss totaling more than $11 million. Hyatt ultimately settled that claim for $750,000 with Allied and Lexington; the settlement amount was steeply discounted from the total loss because the policies between Hyatt and Lexington and Allied did not cover faulty workmanship or mold. With this settlement, Hyatt released Lexington and Allied from all claims under these policies relating to the care center.

Hyatt next discovered problems at the newly constructed residential towers–again, defective construction had resulted in moisture, mold growth, and cracked stucco. While Hyatt initially gave notice of this loss[2] to Lexington and Allied in July 2005, it ultimately decided to bypass the defendant insurers and their inevitable defenses based upon the policy exclusions, and sued Weitz and the architects directly in federal court for $102 million.

Weitz, in turn, sued its subcontractors and their insurers, as well as its own construction contract-related liability insurers. In 2010, prior to trial, Weitz settled with Hyatt for $53 million, a small part of which was paid by the project's architects.

---

[2]Hyatt also discovered damage to the plaza deck in 2008 but did not give notice to the insurers with regard to the plaza deck loss.

Weitz purports to have contributed $51,681,838.94. Weitz was then indemnified by its contract liability insurers (who were also Hyatt's contract liability insurers) and the subcontractors' insurers, in amounts totaling $55,799,684.69. Weitz contends that it obtained assignments for these amounts from its subcontractors and insurers but no such documents appear to be part of the record. Weitz contends that it somehow wishes to seek remuneration under these assignments but offers no apparently valid reason or theory for doing so in this action.[3] Accordingly, we disregard this contention.

Via subrogation, Weitz essentially attempts to obtain coverage for itself under Hyatt's post-construction insurance policies issued by defendant insurers in 2003. Specifically, Weitz posits that at least some part of the coverage afforded by the defendant insurers' policies should now be paid to Weitz on its theory of equitable subrogation or, perhaps, unjust enrichment or both. Neither of these theories are supported by the undisputed facts or applicable law.

In this quest for subrogation, Weitz brought the instant suit against the defendant insurers, initially consisting of only Lexington and Allied. Weitz originally asserted causes of action based on contract, but subsequently amended its pleadings to assert the present subrogation and enrichment claims. In addition to Lexington and Allied, Weitz later added several excess insurers to the suit, limited to claims based upon damages to the residential towers. The defendant insurers moved for summary judgment, taking the position that their insurance contracts did not cover Hyatt's

---

[3]Since Weitz and Hyatt under the terms of the construction contract were both potential insurance indemnitees under the same policies, any assignments that in any way purport to authorize Weitz to recover from Hyatt, directly or indirectly, these insured loss payments, would likely present a severe conflict of interest for the insurance carrier–that is, possibly permitting the insurance company's assignee to somehow seek to sue the insurer's own insured. See, e.g., S. Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc., 395 N.E.2d 320, 329 (Ind. Ct. App. 1979).

damages resulting from Weitz's faulty workmanship and also that other aspects of the claims were barred by contractual periods of limitations. Further, the defendant insurers also contend that Weitz's equitable claims are fatally undermined by the fact that Weitz has already recovered from its own liability insurers (also Hyatt's liability insurers) and its subcontractors and their liability insurers well more than it paid Hyatt in settlement of the Florida litigation.

The district court conducted a choice-of-law analysis and found that Illinois, as the principal place of business of Hyatt and its insurance brokers, the underwriters, and where the insurance contracts were executed, had the most significant contacts. The court recognized that the rights of Weitz, as subrogee of Hyatt, were subject to any defense Hyatt would have faced, and that Hyatt had discharged Lexington and Allied from any liability as to the care center claim. The court next found that the insurance contracts at issue required claims to be brought within two years, and Weitz's suit was filed more than five years after the damage to the care center occurred, and more than four years after the damage to the towers was discovered. Accordingly, Weitz's claims were barred by the contractual period of limitations. Similarly, the court held that Weitz was barred from suing for any alleged damage to the plaza deck because Hyatt did not give the insurers notice of damage to the plaza deck, which was required by the insurance contracts.

In addition to the difficulties with the contractual periods of limitations and notice, the court noted that, though proceeding in equity, Weitz had already collected $55.8 million from others, several million more than it paid to settle with Hyatt. Further, the court was "unconvinced" that Weitz paid a liability for which the defendant insurers were primarily liable, a requirement of equitable subrogation. Finally, the court rejected Weitz's unjust enrichment claim; because the subrogation claim failed, the unjust enrichment claim could not, under Illinois law, survive as a stand-alone claim. Weitz appeals.

## II.    DISCUSSION

We generally review the district court's grant of summary judgment de novo. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). However, we review the district court's exercise of its equitable judgment for an abuse of discretion.  PFS Distrib. Co. v. Raduechel, 574 F.3d 580, 597-98 (8th Cir. 2009).

The laws of three jurisdictions–Iowa (Weitz's headquarters), Illinois (the insurance companies' headquarters and where the numerous insurance contracts between Hyatt and the defendant insurers were executed), and Florida (the situs of the construction project)–could be in play here.  The district court engaged in an admirable and extensive analysis to resolve myriad issues raised by choice-of-law questions and ultimately found that Illinois law had the most significant contacts and therefore, to the extent there was a conflict in the law, Illinois law applied.  The court noted that if there was no conflict, the law of the forum state, Iowa, applied.  We do not necessarily disagree with the court's analysis or conclusions.  However, because we find that Weitz cannot meet the essential elements of either equitable theory of relief, regardless of which state's law applies, we proceed without a choice-of-law analysis.

### A.    Equitable Subrogation

Equitable subrogation provides that "'one who has been compelled to pay a debt that ought to have been paid by another is entitled to exercise all remedies which the creditor possessed against the other.'" Iowa Dep't of Human Servs., ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 156 (Iowa 2001) (quoting Am. Sur. Co. of New York v. Bethlehem Nat'l Bank, 314 U.S. 314, 317 (1941)); see Dix Mut. Ins. Co. v. LaFramboise, 597 N.E.2d 622, 624 (Ill. 1992) (explaining equitable subrogation similarly under Illinois law); Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.

2d 638, 646-47 (Fla. 1999) (explaining equitable subrogation similarly under Florida law). The premise of equitable subrogation is that one party has paid a debt for which another is primarily liable. Here, Weitz cannot establish that the defendant insurers are primarily liable, or liable in any measure, for the damages for which it reimbursed or should have reimbursed Hyatt. Weitz paid for damages arising from its negligent construction under the Aventura contract. Defendant insurers are post-construction insurers, and their insurance contracts with Hyatt expressly excepted and excluded losses caused by Weitz's faulty workmanship, and the resulting mold, from coverage.

Weitz argues that according to its expert witness, the post-construction insurance contracts between defendant insurers and Hyatt provided coverage for approximately $69,000,000 of the $102,000,000 claim for damages Hyatt asserted against Weitz in the 2005 Florida court action. Although it appears that the final portion of the expert's report was left out of the record on appeal, the gist of his written conclusions seems to have been that although faulty workmanship was undeniably and indisputably the genesis of the myriad problems with the towers, care center and plaza deck, some of the resulting damages claimed by Hyatt in the Florida lawsuit included interruption of business expenses, the deleterious effect the negligent construction had on occupancy rates, and the like. These business interruption damages, the expert contends, are covered by defendant insurers' policies. We note, however, that the expert expressly stated that he was "not opining as to the interpretation of insurance policy terms [and that] [t]hroughout this report I have identified assumptions I have made, or have been asked to make, regarding insurance coverage in performing this engagement." While expressly claiming to have looked at the policies at issue, Weitz's expert further explains his observations and assumptions as follows:

> It is Weitz's position that CC-Aventura [Hyatt] had agreed in its [construction] contract with Weitz that property damages and business interruption losses of the type encountered on the Project were first to

be pursued as claims under CC-Aventura's property insurance before pursuing Weitz. Instead CC-Aventura sued Weitz who ultimately settled with CC-Aventura while preserving its right to seek recovery of the covered damages under the Insurance Policies. In the current matter, Weitz now seeks recovery of these damages.

The property insurance referred to above as purportedly "agreed in [Hyatt's] contract with Weitz," appear to be the policies of property insurance agreed upon in the construction contract and procured under paragraph 7E of the contract. Those policies are not, of course, the post-construction insurance policies issued by the defendant insurers in this action. Thus, the expert seems to be opining, at least in some small part, upon premises derived from a property insurance contract not involved in this case. Nonetheless, the expert, as claimed, clearly appears to have reviewed and made an analysis of the defendant insurers' policies at issue in this action. However, in disputes such as this, construction of the terms and conditions of written contracts, including insurance policies, is an issue of law for the trial court to determine, not matters of fact insertable into the trial record through the Federal Rules of Evidence. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003) (noting "[t]he [c]onstruction of an insurance policy–the process of determining its legal effect–is a question of law for the court.") (second alteration in original) (quotation omitted)).

Accordingly, Weitz's expert's interpretations of the various coverages at work in defendant insurers' policies and the expert's resulting emanations concerning the nature and scope of the insurable damages arising from the various actions of the parties to the construction contract become a clear invasion of the interpretative responsibilities and legal pronouncements of the trial judge. Because the record appears to indicate that the trial court essentially ignored the expert's report, it seems clear that the court correctly recognized the serious deficiencies in the validity of Weitz's legal claims concerning the defendant insurers' policies when stating:

-8-

[T]he money Weitz paid Hyatt resulted from Weitz's own liability. . . . Weitz made a payment to Hyatt to protect its own interests and pay its own liability to Hyatt. . . . Weitz's payment was voluntary in the interest of settling its own liability and debt with Hyatt. . . . Weitz's payment to Hyatt did not satisfy a debt for which the claimant [Weitz] was not primarily liable.

The Weitz Co., LLC v. Lexington Ins. Co., 982 F. Supp. 2d 975, 1004 (S.D. Iowa 2013) (internal quotation omitted).

Even had there been some post-contract insurance coverage, Weitz, as the initial source of the negligence and poor workmanship that started the tidal wave of damages to Hyatt, cannot escape the fact that it (or its subcontractors) was primarily liable for the damages pursuant to usual principles of negligence and foreseeable loss. "Equitable subrogation is the appropriate remedy when one who is secondarily liable satisfies a debt for which another is primarily liable." Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 346 F. Supp. 2d 958, 964 (N.D. Ill. 2004); see also Dade Cnty., 731 So. 2d at 646 (noting that party seeking equitable subrogation cannot be primarily liable on the debt); Unisys Corp., 637 N.W.2d at 157 (equitable "[s]ubrogation only requires that the payment by the party seeking subrogation satisfy an obligation for which that party is not primarily liable").

In an attempt to recast its liability to Hyatt from primary to secondary, Weitz attempts creative interpretation of construction contract language, especially Paragraph 7 dealing with insurance. In doing so, it relies wholly upon its own interpretations of the contract requirements and the give and take occurring as part of the settlements, negotiations, compromises and releases involving Hyatt, subcontractors, insurers and other claimants. At the bottom line, however, Weitz cannot escape the terms of Paragraph 7M of the construction contract which states:

-9-

All insurance required to be maintained by Contractor [Weitz] or any Subcontractor shall be primary to any other valid and collectible insurance, except that such insurance to be maintained by Contractor need not be primary to the insurance to be carried by Subcontractors.

Accordingly, Weitz's argument that the contract's property insurance procured by Hyatt must first pay for any damages before Weitz would face any liability is simply contractually unsupportable.

Even so, the primary or secondary nature of its liability to Hyatt is not Weitz's only hurdle under its theory of equitable subrogation. The person or entity discharging a debt and claiming equitable subrogation stands in the shoes of the person whose claim has been discharged, and acquires the rights and defenses of that person, but not more. Dade Cnty., 731 So. 2d at 647; Dix, 597 N.E.2d at 624. Weitz's difficulty with the shoes it fills is that Hyatt received just over $51 million from Weitz and chose to compromise and release the rest of its claim in return for settlement. Wearing Hyatt's shoes, Weitz would be entitled to recover that amount, not more. Weitz has, of course, already recovered more than this amount from its insurers and subcontractors for the same claim and, as earlier noted, cannot now look to its co-insured Hyatt for reimbursement. It is a well-settled "equitable principle that the injured party is entitled to be made whole but not allowed a double recovery." Allied Mut. Ins. Co. v. Heiken, 675 N.W.2d 820, 828 (Iowa 2004); see also Mosley v. Am. Med. Int'l, Inc., 712 So. 2d 1149, 1151 (Fla. Dist. Ct. App. 1998) (same); YMCA of Warren Cnty. v. Midland Architects, Inc., 529 N.E.2d 288, 291 (Ill. App. Ct. 1988) (same). Because Weitz has already recouped its payment to Hyatt, the district court did not abuse its discretion in refusing to allow Weitz in this action to recover what it paid to Hyatt and especially not more than it paid Hyatt.

**B.** **Unjust Enrichment**

Weitz also pleaded that it was entitled to recover from the defendant insurers based on the theory of unjust enrichment. The district court dismissed this claim on the basis of Illinois law and did not address the merits of the claim. However, we may affirm on any basis supported in the record, Spirtas Co. v. Nautilus Insurance Co., 715 F.3d 667, 670-71 (8th Cir. 2013), and given our equitable subrogation analysis, there is an adequate record to support a finding that unjust enrichment fails as a matter of law.

A party asserting unjust enrichment must allege that another has received a benefit, the retention of which would be inequitable. See Fla. Power Corp. v. City of Winter Park, 887 So. 2d 1237, 1241 n.4 (Fla. 2004); Unisys Corp., 637 N.W.2d at 157; HPI Health Care Servs., Inc., v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989). Thus, Weitz must first establish that the defendant insurers have unjustly retained a "benefit." Presumably, that "benefit" alleged is not having to pay insurance claims that Weitz's expert alleges were covered under the contracts between the defendant insurers and Hyatt. Similar to the analysis for equitable subrogation, a close cousin to the unjust enrichment doctrine, see Kala Investments, Inc. v. Sklar, 538 So. 2d 909, 917 (Fla. Dist. Ct. App. 1989) (noting that the policy behind equitable subrogation is to prevent unjust enrichment), the relative positions of the parties with regard to the equities of this case is fatal to Weitz's unjust enrichment claim.

Assuming defendant insurers did benefit by not having to pay claims that Weitz's expert believes they are liable for under the insurance contracts, Weitz's problem becomes circular. Had Hyatt made a claim against the defendant insurers and the claim had been paid, the defendant insurers could have, and undoubtedly would have, exercised their contractual rights of subrogation and sought compensation from the original tortfeasors–Weitz and the subcontractors. The fact

that Hyatt chose to circumvent this route and proceed directly against the general contractor and its subcontractors does not confer an unjustly retained benefit upon the defendant insurers. Perhaps it did benefit the defendant insurers to not have to pay a claim and proceed to litigation, but it doesn't strike us as an *unjust* benefit when compared with transgression of the original tortfeasors. To hold that Weitz conferred a benefit on the defendant insurers (at a detriment to itself) by agreeing to settle and compromise a lawsuit based upon Weitz's own negligence or that of its subcontractors, stretches the bounds of the doctrine. "The basis for the unjust-enrichment doctrine is that no one ought to enrich himself unjustly at the expense of another." Nesby v. Country Mut. Ins. Co., 805 N.E.2d 241, 243 (Ill. App. Ct. 2004); see 14th & Heinberg, LLC v. Terhaar and Cronley Gen. Contractors, Inc., 43 So. 3d 877, 880 (Fla. Dist. Ct. App. 2010) (describing unjust enrichment as a "legal fiction" wherein "it is deemed unjust for one party to have received a benefit without having to pay compensation for it") (second quotation omitted). We find that defendant insurers, as a matter of law and the undisputed facts of this case, have not enriched themselves unjustly at the expense of Weitz.

## III.   CONCLUSION

Because we find that the district court did not abuse its discretion in finding that Weitz cannot establish the elements of equitable subrogation, and because we find that Weitz's claim for unjust enrichment also fails as a matter of law, we affirm the district court.

_____